## Case No. 376.

### ANDREWS v. GRAVES.

[1 Dill. 108;[1] 4 N. B. R. 651.]

Circuit Court, D. Missouri. 1870.[2]

BANKRUPT ACT—PRACTICE — DEPOSITIONS—RIGHT OF ADVERSE PARTY TO USE, ETC.

1. Under a declaration upon the 35th section of the bankrupt act, alleging that the bankrupt did "transfer, assign, and convey," &c., to the defendant, the plaintiff is not limited on the trial to the proof of a technical assignment under the state insolvent laws.

2. A judgment will not be reversed because papers recognized on the trial in evidence were not formally read.

3. Under the circumstances stated in the opinion, it was held that district court did not err in allowing a deposition taken and filed by one party to be read in evidence by the other.

4. Dates fixed by the records of the court may be stated to the jury as facts.

5. The court will look at the entire charge to the jury, in order to ascertain whether the law was, upon the whole, fairly presented to them.

6. Construction of the 35th section of the bankrupt act; and the ingredients of a right of the assignee to recover thereunder, stated and commented on by Treat, District Judge.

In bankruptcy. Writ of error, to the district court for the western district. The action was brought by the assignee of Lawrence, against the defendant, under the 35th section of the bankrupt act. The plaintiff recovered, and the defendant sued out the writ of error, which now brings the cause before this court.

Glover & Shepley, for plaintiff in error.

E. T. Allen, for defendant in error.

Before DILLON, Circuit Judge, and TREAT, District Judge.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge. and here reprinted by permission.]

[2] [Affirming an unreported decree of the district court.]

TREAT, District Judge. Many of the errors assigned are dehors the record. This was an action, substantially, of trespass de bonis asportatis. The declaration avers that the bankrupt did on the (blank) day of October, 1869, "transfer, assign, and convey" (the statutory terms) to the defendant, &c.

The counsel below seems to have supposed the time material, and that the cause of action was limited to a technical assignment, as under the state statute, and consequently no evidence was admissible as to any other form of an alleged fraudulent transfer or conveyance, or as to any such transfer or conveyance at a different time from that stated in the declaration. The declaration is so framed as to cover any fraudulent transfer, assignment, or conveyance during the six months prior to the filing of the petition in bankruptcy. Hence all the errors assigned which are based on the incorrect hypothesis of counsel below as to the cause of action, disappear.

It is said there is no evidence that Andrews was adjudged bankrupt, or the plaintiff appointed assignee. The declaration avers these facts, and that the adjudication was made by the court which tried the case; and frequent reference is made at every stage of the case to the records of the court in the bankruptcy proceedings, showing that those records were produced and recognized as in evidence. No objection was made below that they were not formally read or offered in evidence; but all parties treated them as before the court and jury.

It appears that the defendant caused the deposition of Higgins to be taken on notice, before Register Lindenbower, and that at the time and place designated both parties appeared by counsel and examined, cross-examined, and re-examined the witnesses at great length; that said deposition was duly filed in the cause, and that defendant moved to strike the same from the files, on the grounds set out in the written motion therefor, and subsequently objected to the plaintiff's reading the deposition for reasons stated. The grounds thus stated are, except in one particular, dehors the record, and for aught known to this court, the motion and the objections were overruled, because it was apparent to the court that they had no foundation in fact. It does appear that the deposition was taken before the register at the instance of the defendant himself, and with the assent of the plaintiff. that after being duly certified was placed on file in the case. In Yeaton v. Fry, 5 Cranch. [9 U. S.] 335, one of the errors assigned was that the plaintiff was permitted to read in evidence depositions informally taken by the defendant under a commission, and the supreme court held that there was no error committed, Chief Justice Marshall delivering the opinion. That case does not expressly determine all the points here presented, but it decides that, when depositions are not tak-

en ex parte or de bene esse under the act of 1789, or both parties appear and examine and cross-examine, and the depositions are subsequently placed on file, the party at whose instance they were taken, cannot object to their being read by the opposite party on the ground of any irregularity or informality. Having taken a deposition under the circumstances named he cannot except thereto, nor cause the same to be suppressed. The officer before whom taken ought to cause the same to be transmitted to the court, for the benefit of all concerned, and once on file the defendant could not suppress or withdraw it. Although a register has no authority to take such a deposition, yet he has full authority to administer oaths; and when by the assent of parties he has taken such a deposition to be used as evidence in the cause, the same becomes a sworn statement made in the case to be used as evidence therein, to which the defendant causing the same to be taken cannot object. The irregularity was defendant's, to which the plaintiff might have excepted, not the defendant.

We do not understand the record to show that there was any objection to the use of the deposition on account of the incompetency of the officer before whom it was taken; nor does the objection seem to have been made that one party could not use the deposition taken by another, had it been properly certified, returned, and filed. But there having been an appearance before the officer by counsel of both parties, and a full examination and cross-examination of the witness, and no showing that the witness was present in court, and the course pursued being conformable to the usual practice in the state, we unite in holding that the court did not err in allowing the deposition to be read, without now deciding that one party has in all cases an absolute right to use depositions taken by his adversary.

As the records of the court before the judge fixed the precise date at which Andrews' petition in bankruptcy was filed, and were absolute verity, no error was committed in stating that date to the jury.

To determine whether there was error in charging the jury it is necessary to look to the whole charge, so as to ascertain whether one part thereof is not qualified by another, and thus the law fairly presented. The definition of insolvency in this case (the defendant being a merchant) was not only correct, but the allusion to another provision of that act, as illustrative of the reason of the rule, was unobjectionable.

All through the charge the court endeavored to enforce upon the jury that it was their exclusive province to weigh the testimony, and determine what it established. Their attention was called to the testimony bearing upon certain points to be ascertained, and the rules of law in reference thereto stated. If the charge were to be considered as to each sentence or point, dissevered from the other sentences or points in the complex problem, room might exist for sharp criticism as to successive details; but the question for review is whether the law governing the case was fairly and correctly stated, and not whether another and different mode of presenting them would not have been more satisfactory to one or the other of the parties litigant.

The law on which is based the plaintiff's right to recover, requires these facts to be proved:

1st. The vendor was insolvent, or in contemplation of insolvency.

2d. The vendee had reasonable cause to believe such to be the condition of the vendor.

3d. The sale was made by the vendor with a view to contravene the provisions of the bankrupt act.

4th. The vendee had good reason to believe such to be the view or intent of the insolvent vendor in making the sale. Babitt v. Walbrun, [Case No. 694.]

Hence as to the vendor, it must be shown that he was insolvent, &c., and that he made the sale with the view named; and on the part of the vendee, that he had reasonable cause to believe the status of the vendor to be as charged, and his purpose or intent to be in making the sale a contravention of the act.

In ascertaining the alleged fact of insolvency, it was proper to charge the jury in such a way as to give them a clear view of the legal meaning of the term. That was done. Not only was a correct definition of insolvency given, as applicable to a merchant, but it was illustrated by reference to another provision of the act. That illustration, so far from being ground of error, was quite appropriate, in order that the jury might have a clear understanding of the general proposition stated. So it was proper to direct the attention of the jury to the distinction between "reasonable cause to believe" and "actual belief"—between willfully shutting the eyes against demonstrative facts and circumstances, and their obvious existence. In that respect the charge was more favorable to the defendant than a stricter statement of the rule might have justified.

The statute declares what shall be prima facie evidence of a fraudulent transfer, and when such a prima facie case is made out, and no explanatory evidence is offered, it is unnecessary for the court to enter upon minute or elaborate distinctions as to the force and effect thereof. The case should be treated in the light of the law as applicable to the testimony produced, and not with reference to supposed or imaginary states of proofs possible to be adduced in some other cause. The jury are to be instructed and not confused; and there is no need of going beyond the legal requirements of the case presented. In the light of the testimony, the court was called upon to define the rules

ANDREWS (Case No. 377) [1 Fed. Cas. page 896]

of law applicable thereto, and did so without repeating each element of the problem as it passed to the next in logical order.

The testimony sufficiently established the insolvency of the vendor, and reasonable cause in the vendee to believe the vendor insolvent. It also showed that the sale was made out of the ordinary course of business, and consequently there was prima facie evidence of fraud—fraud on the part of the vendor, in which the defendant was directly participating. If the law declares a sale under given circumstances, prima facie evidence of fraud, it is prima facie evidence to all concerned—to the vendee as well as to the vendor. It is difficult to perceive how, when prima facie evidence of a fact is presented, a person has not reasonable cause to believe the fact to exist, or, in the language of the decision, "to be put upon inquiry."

Dealing with the case as it thus stands, the court below brought with sufficient clearness to the minds of the jury the legal rules by which their action was to be governed, and guardedly stated that it was exclusively for them to give, even to the prima facie evidence, such weight as they might deem proper.

In referring to the testimony concerning the mortgage on the property of the bankrupt's wife, and the manner in which by the contrivance of the defendant and the bankrupt conjoined, that mortgage was paid off at the expense of the creditors, the court used the strong language with which the law characterizes such a transaction. Certainly there is no assignable error on that ground. If a father-in-law, when his son-in-law is known by him to be insolvent, and within a few days of his voluntary application to be adjudged a bankrupt, buys, out of the usual course of trade, a large, if not the largest portion of the insolvent's property, and gives notes payable at long dates, and then cashes the notes and pays to his own son as mortgagee the money thus furnished, in discharge of a mortgage on the property of his daughter, who is the wife of the bankrupt son-in-law, it is not improper to say the law frowns on such contrivances for using the bankrupt's means to the detriment of his honest creditors. That transaction obviously was the transfer of the bankrupt's property to his wife in fraud of his creditors, through the agency of the wife's father for the benefit of herself and of his son, the mortgagee.

The defect in the declaration was cured by the verdict under the statute of jeofails.

DILLON, Circuit Judge, concurs.
Affirmed.

NOTE, [from original report.] In the circuit court for the eastern district of Arkansas, at the April term, 1871, (present, Dillon, Circuit Judge, and Caldwell, District Judge,) it was held, that where the plaintiff had taken ex parte a deposition de bene esse, and subsequently in like manner took the second deposition of the same witness upon the same subject, and read the last in evidence (which referred to the first), that the defendant might read to the jury the first deposition; and the case was distinguished from Sexton v. Brock, 15 Ark. 345, where this subject is fully considered, and the cases collected and reviewed by Mr. Chief Justice Watkins. See, also, Yeaton v. Fry, 5 Cranch, [9 U. S.] 335.