Lemay vs. Williams.

---

LEMAY VS. WILLIAMS.

1. ALTERATION.
    The alteration of the date of a note by the holder, without the consent and to the prejudice of the maker, is a forgery and renders the note void.
2. ACKNOWLEDGMENT; *Mortgage.*
    A mortgage is binding between the parties to it, whether acknowledged or not.
3. MALICIOUS PROSECUTION; *Malice.*
    If a party makes a full statement of the facts to his counsel, and acts under his advice in the prosecution of an attachment against the property of his debtor, this is evidence, but not conclusive, of a want of malice.

4. MALICIOUS PROSECUTION; *Malice.*

Where a party has a good cause of action, and prosecutes it under process from a court of competent jurisdiction, there is no presumption of malice: and the omission, by mistake, to state in the proceedings some act necessary to bring the case within the purview of the law authorizing the action, does not make the action without probable cause, nor subject the prosecutor to an inference of malice; but if a creditor sues out process of attachment without a legal debt, or before it becomes due, and when there is no fraudulent intent of the debtor to avoid it, these facts are evidence, but not conclusive, of malicious prosecution.

5. ———— ; *Same.*

In a legal sense any unlawful act wilfully done, to the injury of another, is as against that person, malicious. Proof of malice need not be direct, but may be inferred from circumstances.

6. ATTACHMENTS; *Jurisdiction of justices of the peace.*

Justices of the peace have no jurisdiction under sec. 441, Gantt's Dig., which provides for attaching mortgaged personal property. That section refers alone to Circuit Courts.

APPEAL from *Lafayette* Circuit Court.

Hon. THOS. C. MCRAE, Special Judge.

*A. B. Williams,* for appellant.

*Cook,* contra.

WALKER, J.:

Williams brought an action in the Lafayette Circuit Court against Lemay for damages sustained by him on account of a malicious prosecution by attachment by Lemay in a justice's court against Williams.

The action in the justice's court was commenced November 1st, 1874, upon a note which purported to have been executed on the 7th of May of that year, for $158, due 25th of December thereafter, and upon a mortgage of that date given on a crop of cotton and corn to be planted and cultivated in that year, to secure the payment of said note.

The substance of the plaintiff's allegation is, that Lemay maliciously and without probable cause, sued out two orders of

attachment; the first against four thousand and five hundred pounds of seed cotton and two hundred bushels of corn, the property of Williams, and caused the same to be executed; that the property was by virtue of said order, taken and kept out of the possession of Williams for sixteen days, and the process returned to the justice as executed; that immediately after such return, Lemay maliciously and without probable cause, sued out from said justice another attachment against three other bales of cotton, the property of Williams, and caused the same to be executed, and the three bales of cotton to be taken and kept out of the possession of Williams for fifteen days; and that the suits by attachment under which said cotton and corn were attached, had been and were discontinued.

The defendant, Lemay, in his answer, denies malice and sets up in defense, title to the property in himself. This issue was tried by a jury who found a verdict in favor of the plaintiff, upon which judgment was rendered. Defendant, Lemay, appealed to this court.

It appears from the evidence that Lemay, in 1874, was engaged in selling goods and supplies to planters and others in Lafayette County, and Williams, a planter, had rented land from Parks to be cultivated in corn and cotton. Prior to that time there had been dealings between Lemay and Williams, who, as a witness, deposed, that on the 31st of March, 1874, he and Lemay settled their account for the year 1873, and he was found to be indebted to Lemay $150, for the payment of which he executed his note; that on the 7th of April, 1874, Lemay furnished witness a trade note for $8, took up the note for $150, and witness executed to Lemay a new note for $158, to secure payment of. which as well as for further supplies to be furnished, witness executed to Lemay a mortgage on the crop of corn and cotton to be raised that year on the Parks' plantation.

The date of the mortgage was left blank with an understanding that it was to be dated at a future day, when the mortgage was to be acknowledged. That thereafter, on the 15th of April, he applied to Lemay for a pair of shoes and was refused further credit; that the true date of the note was 7th of April, 1874, but that afterwards, without authority from witness, it was changed to the 7th of May of that year. On the 25th of May thereafter, Lemay and Wilson, the justice of the peace, came to where witness was at work, and requested him to date and acknowledge the deed as executed on that day; witness admitted that he had signed the deed, but refused to date it as of the 25th of May and acknowledge it as of that date. Wilson had the deed in his hand at the time, but made no inquiry of witness whether he had executed it for any purpose or consideration whatever. Lemay was also sworn as a witness and testified, that both the note and mortgage were executed and delivered to him by Williams on the 7th of May, 1874; that the word April was written by mistake, and corrected by erasing April and inserting May in place of it; that the date of the mortgage was left blank to be inserted as of the date when it was acknowledged.

Worris, a subscribing witness to the note, testified that both the note and mortgage were executed on the same day, but at what particular date he could not recollect.

Wilson, the justice, testified that on the 25th of May, when Williams was requested to acknowledge the deed, it was not dated, and that he, at the instance of Lemay, dated it as of the 7th of May.

In support of the testimony of Williams, Parks deposed that he saw Lemay about the 1st of April, who told him that he had made an arrangement with Williams to furnish him supplies for the year 1874, and understood from Lemay, that he had taken from Williams a mortgage; remembers that Lemay told witness

that he intended to take mortgages from those to whom he was furnishing supplies, and have them acknowledged before Wilson, after the crops were up; that about three days after the 25th of May, when Lemay and Wilson applied to Williams to acknowledge the deed, Lemay told witness, Williams had refused to acknowledge the deed and had acted the rascal with him.

John A. Steele deposed that he was clerk for Lemay in February, March and part of April, 1874, that he left the store of Lemay on the 19th or 20th of April, remembered that on the last of March, or first of April, he saw Lemay and Williams standing at the desk fixing up papers, but what they were did not remember; saw Williams come out with a trade note in his hand. Some days after this heard Williams apply to buy a pair of shoes, Lemay refused to let him have them. Williams then told Lemay that he was done with the mortgage and would have nothing more to do with it.

Thompson, another witness, deposed that before the overflow which commenced late in April, he was at Lemay's store and heard Lemay tell his clerk, if Williams called for the mortgage to take to Wilson, to let him have it.

The evidence of an expert was that the alteration of the date of the note appeared to have been made with different ink from that used in the body of the instrument.

. This is substantially the evidence touching the execution of the note and mortgage, and particularly as to dates.

If, in fact, the note was executed on the 7th of April and subsequently changed to the 7th of May, without his consent and to the prejudice of Williams' rights, the alteration was a forgery and the note void. The time when the mortgage was executed was important, in determining whether there existed a crop of corn and cotton; if no such crop was in existence, then there was no property mortgaged, no contract could be enforced in a

court of law, as held in *Apperson* v. *Moore*, 30 Ark., 56, and approved in several of our later decisions.

The question raised by the instructions, as to whether the deed was in fact acknowledged, or was falsely certified as having been acknowledged, was properly held by the court to be of no importance, because, under the state of the case presented, it was an issue between the grantor and grantee, not involving the rights of third parties, and if executed, whether acknowledged or not, was binding as between themselves, as held in *Stirman et al.* v. *Cravens et al.*, 29 Ark., 548.

It is true that there is evidence that corn was planted before the 7th of May; it is also in proof that about the same time there was an overflow of the land which continued until after the 7th of May, but whether the corn at that time was up and growing does not appear. The testimony shows that the crop of cotton was planted between the 7th of May and the 5th of June; such being the case, there was, at the time when the deed, according to Lemay's own showing, was executed, no crop of corn and cotton in existence, nothing to which his mortgage could attach.

The suit in the Justice's Court brought by Lemay against Williams, stripped of this claim of mortgage lien upon a crop of corn and cotton, stood alone upon the note for $158, due 25th December, 1874.

To sustain him in bringing an action for its recovery on the 1st day of October, 1874, before the time when his debt was due, leaving out of the question whether the note was not void, on account of the change of date, which was the proper subject for the consideration of a jury, we will proceed to consider the remedy sought and the rights of Lemay under it, as important in determining the real question at issue; which is, whether the prosecution was or not malicious, and so clearly without a probable cause of action, as to impute to Lemay malice in prosecuting his attachments against the property of Williams.

We have seen that the complaint was made before a justice of the peace, was based upon the note and mortgage as the grounds of his right to attach the property, and first, as to the note which was not then due, and of course, unless under extraordinary statutory provisions, was not a present cause of action. Lemay knew his debt was not due; of this there could be no mistake; he may have taken counsel as to the means of enforcing his extraordinary remedy; if he did so, it is to be presumed that he was advised of the state of the case which must necessarily exist to entitle him to the process of attachment. If upon a full statement of the facts, he was advised by counsel, that he could proceed by attachment and under that advice acted, evidence that he acted under it although not conclusive, will strongly tend to repel the implication of malice. *Shannon* v. *Buckner*, 77 Ill., 164; *Murphy* v. *Lawson*, Ib., 172; *Cox* v. *Davis*, 55 Geo., 289.

Lemay was certainly not entitled to the process of attachment under the provisions of sec. 388 of Gantt's Digest, which alone has reference to debts or demands due. Sec. 437 provides for process by attachment before the debt becomes due, and then only in cases where the debtor has sold, conveyed, or disposed of his property with a fraudulent intent to cheat or defraud his creditors, or to hinder or delay them from collecting their debts, or is about to make such sale or disposition with such intent, or is about to remove his property or a material part of it, out of the State with a like fraudulent intent.

These material facts are wanting in the complaint in this instance. The plaintiff states as a matter of belief, that unless prevented by the court, four thousand and five hundred pounds of seed cotton and two hundred bushels of corn will be sold, conveyed or removed from the State by Williams, all of which Williams certainly had a right to do, unless done with a fraudulent intent to injure and defraud his creditors.

If such fraudulent intent had, in fact, existed, but by oversight or inadvertence had been omitted in the complaint, proof of such fact would tend to remove an imputation of malice, but there is nothing in the case before us which indicates that Williams' conduct was fraudulent; it is in proof that he informed Lemay that he had sold part of the crop and intended to make further sale; in effect he denied the validity of the mortgage and put Lemay in possession of the fact.

The remaining sec. 441, Gantt's Dig., gives to the mortgagee a right of attachment upon personal property upon petition sworn to that he has a just claim; that the property is about to be sold, or caused to be removed out of the State, or that he has reasonable cause to believe that unless prevented by the court, that the property will be sold or removed out of the State.

It may have been the intention of the plaintiff to pursue his remedy under this section, as a mortgage lien creditor; but conceding the fact that he had a valid mortgage lien upon the crop of corn and cotton (which we think is not the case), the question is, could he assert such right before a justice of the peace.

Counsel for the appellant refers to the Constitution of 1868, which gives to justices of the peace jurisdiction in actions of contract and replevin in limited amounts, and that this jurisdiction extends to all contracts legal and equitable, limited only by the amount in controversy. In support of this view reference is made to the Kentucky Code of Practice under which justices of the peace are vested with equitable jurisdiction in certain cases. If the decisions of the Kentucky courts and others referred to, sustain this equitable jurisdiction, it is certainly because it is conferred upon justices of the peace by statute. In this State no such statute exists; on the contrary, there is an express limitation of the jurisdiction of justices by special limitation.

Sec. 3718, Gantt's Dig., confers exclusive jurisdiction upon justices of the peace in actions of contract and replevin absolutely to the extent of $200, and concurrently between $200 and $500, but in express terms of limitation declares that it shall extend to no other civil action, and as if to leave no question of doubt upon the subject, the legislature, sec. 3725, limits the jurisdiction of justices of the peace to such as are above enumerated, and with these exceptions declare them to be the sole and only laws governing the mode of proceeding in Justices' Courts in civil proceedings.

The provision in sec. 441 for attaching personal property which has been mortgaged, has reference alone to proceedings in the Circuit Court, refers alone to Circuit Courts and the judges of Circuit Courts without any reference whatever to Justices' Courts and justices of the peace.

Thus sec. 443 provides, that the court in which the action is brought, or the judge thereof, or any judge of the Circuit Court, may grant an order of attachment upon such terms and conditions as to security, etc., and the disposition to be made of the attached property.

The power is conferred upon the court in which the suit is brought, and the judge of the court, or the judge of any other court in vacation. It is an ancillary proceeding intended to lay hold of property and hold it from waste and misapplication, subject to the final adjudication of the case upon its merits. It is a proceeding in regard to which justices of the peace have nothing to do ; no jurisdiction and no power to order an attachment. It is under this state of case, as to the legal right of Lemay to attach the property of Williams and of all the attendant circumstances connected with the action brought by Lemay against Williams, that the question at issue is to be determined, which is whether the suit was maliciously prosecuted without

probable cause, to the damage of Williams. If Lemay had a good cause of action, then existing, and was prosecuting it under process isssued by a court of competent jurisdiction to afford to him the redress to which by law he was entitled, all presumption of malice is repelled; because then there is probable cause for the institution of the suit, indeed a complete cause of action and legal right to enforce it, and when such is the case, if by mistake some act is omitted which was necessary to bring the case within the provisions of the law, there would certainly be a good probable cause of action, and malice would not be inferred; but when a party in fact has no valid cause of action, or has one which is not due, or which can be enforced when not due only by extraordinary process, to entitle himself to obtain the benefit of which he has not complied with the law, these circumstances with others, tend to show a want of probable cause, and if sufficiently strong may be used as evidence of malice, and an intention to injure the party against whom the process is issued, because the party suing out the process must be presumed to know whether he has a legal debt, whether it is due or not, and if not due that the debtor by his false and fraudulent acts has given to the creditor the right to lay hold of the property and take it from the possession of the debtor, and hold it to be subjected to the payment of his debt when due; and if in fact the creditor sues out a process without a legal debt, or before it becomes due and in the absence of fraudulent intent on the part of the debtor, these circumstances strongly tend to fix upon him the penalties of the law for malicious prosecution, which may, however, to some extent be repelled by other evidence tending to show probable cause.

If in the case under consideration Lemay had based his right of action solely upon his claim of mortgage lien, and not also upon his note for the satisfaction of a debt within the jurisdic-

tion of the justice of the peace, the subject matter would clearly have been one over which a justice would have no jurisdiction, and trespass not case would be the appropriate remedy.

Perhaps under our Code of Practice this distinction would be less important; but in this case there is a note as well as a mortgage for the subject of consideration, and the process of the justice should not be treated as absolutely void, and the action for malicious prosecution may be sustained under the state of case presented. The general rule laid down by Greenleaf is illustrated, not shaken by the authorities referred to by counsel, and fully sustains the view which we have taken of the law governing the case. In paragraph 449 he says: " that it is not necessary that the whole proceedings be utterly groundless, for if groundless charges are maliciously and without probable cause coupled with others which are well founded, they are not on that account the less injurious, and therefore constitute a valid cause of action; nor is the form of the prosecution material, the gravamen being that the plaintiff has improperly been made the subject of legal process to his damage."

The same authority, paragraph 453, says : " The plaintiff must also show that the prosecution was instituted maliciously and without probable cause, and both these must concur. If it were malicious and unfounded but there was probable cause for the prosecution, this action cannot be maintained."

In a legal sense any unlawful act done wilfully and purposely to the injury of another, is as against that person, malicious; the proof of malice need not be direct but may be inferred from circumstances.

The position is fully sustained in the case of *Commonwealth* v. *Snelling*, 15 Pick., 321, in which Parker, J., said, " the term malice in this form of action is not to be considered in the sense of spite or hatred against an individual but of *malus animus*, and

as denoting that the party is actuated by improper and indirect motives," and in thus holding, Justice Parker substantially sustains the first and second instructions of the plaintiff, in which the court instructed the jury that, "if the defendant Lemay did not act as a man of caution and prudence, impartially, reasonably and without prejudice and malice, or a desire to gain an undue advantage of the plaintiff, *they may find* that the order was issued without probable cause, and may infer malice on the part of the defendant."

In *Holliday* v. *Sterling*, 62 Mo., 321, it was held that "in an action for maliciously suing out an attachment, express malice need not be shown, but may be inferred from want of probable cause."

In the case of *McWilliams* v. *Hoban*, 42 Md., 56, in an action for malicious prosecution the instructions of the court were: "If there were no circumstances connected with the transaction out of which the prosecution arose, which would warrant a reasonable, dispassionate man in believing the plaintiff to have been guilty of the charge made against him, and in undertaking such prosecution from public motives, then there was no probable cause for the prosecution, and the jury may infer, in the absence of sufficient proof to satisfy them to the contrary, that the prosecution was malicious."

Conceding, however, as we must, that the instructions, if taken apart from the three given at the instance of the plaintiff, might have tended to mislead the jury, yet when taken in connection with it they were not seriously objectionable.

The court instructed the jury at the instance of the plaintiff properly qualified, that the word "malice," as used in these instructions is not to be construed by the jury in the sense of spite or hatred on the part of the defendant to the plaintiff, and if therefore the jury believe from the evidence, that said orders of

attachment, or either of them were procured to be issued by the defendant by improper or indirect motives, or without authority of law, the jury may infer malice on the part of the defendant in the procurement thereof, notwithstanding, they may further find that the plaintiff was indebted to the defendant as claimed in said action.

At the instance of the defendant, the court instructed the jury, "that if from the evidence, they believed that plaintiff executed to defendant a mortgage bearing date 7th May, 1874, which was in no wise changed except in filling up the blank therein purporting to be of the day on which the same was executed, planted a crop of corn and cotton on the place of John D. Sparks in the year 1874, and that the plaintiff executed the note given in evidence bearing date May 7th, 1874, and that the note had not been paid, changed or altered since the execution thereof, or if changed or altered in the date thereof, and that the defendant having reason to believe that the plaintiff had or was about to sell, conceal or remove from this State said crop or any part thereof, sued out said order of attachment to enforce said mortgage or foreclose the lien acquired by said mortgage, and to enforce the collection of said note, the jury may find for the defendant." Which instruction the court refused to give in the form asked, but which was given by adding after the word, May, 1874, in the second line, the words, "and delivered the same to the defendant as a mortgage."

From the view which we take of this instruction, we think it erroneous, but clearly not an error of which the defendant could complain, because, as we have already seen there was no mortgage, no crop in existence at the time the deed was executed, and therefore no authority for issuing an attachment to enforce a lien upon the crop afterwards grown.

Without further reference to the instructions asked they were all exceptionable for this reason and properly refused.

Whether the prosecution was or was not malicious and without probable cause was the proper subject of consideration for the jury, there was evidence introduced tending to sustain the finding of the jury; and finding no error in the instructions of the court as to the law governing the case tending to mislead them in the application of the evidence, the motion of the appellant to set aside the verdict, and grant to him a new trial was properly overruled.

Let the judgment of the court be affirmed.