FOSTER v. PITTS.

Opinion delivered January 23, 1897.

| 63 | 387 |
|----|-----|
| 63 | 569 |
| 63 | 387 |
| 64 | 461 |
| 63 | 387 |
| 69 | 441 |
| 63 | 387 |
| 73 | 439 |
| 63 | 387 |
| 78 | 560, |
| 78 | 561, |

MALICIOUS PROSECUTION—BURDEN OF PROOF.—In a suit for malicious prosecution, the plaintiff must prove both malice and the want of reasonable cause.

MALICE DEFINED.—Malice is any improper or sinister motive for instituting the suit. It need not spring from any spirit of malevolence, nor be prompted by any malignant passion.

PROBABLE CAUSE DEFINED.—To constitute probable cause for a suit in attachment, it must appear, not only that there were reasonable grounds for the belief, but also that defendant actually believed, that there were grounds for the attachment.

PUNITIVE DAMAGES—ACT OF AGENT.—Where a creditor authorizes his attorney to protect his claim in case of danger, and the attorney brings an attachment suit against the debtor maliciously and without probable cause, the creditor is liable for actual damages only, but not for primitive damages, unless, with knowledge of the facts, he has ratified the attorney's action.

SAME—INSTRUCTION DISAPPROVED.—An instruction which assumes the existence of elements of actual damages not in proof or authorizes the jury to assess punitive damages in such sum as, in their judgment, the plaintiffs are entitled to, without basing the amount on the evidence, or limiting it to the amount claimed in the complaint, is erroneous.

EVIDENCE—VALUE OF PROPERTY.—Where an attachment creditor has removed property from the state, the test for determining whether he has left enough to satisfy the claims of his creditors is to ascertain what the property remaining at the time of the attachment will bring at its fair market value, not what it will bring by process of law.

SAME.—Evidence of what per cent of notes and accounts could be collected in one or two years after an attachment suit was begun does not show their market value at the time of the attachment.

INSTRUCTION—WHEN NOT PREJUDICIAL.—Where appellant's attorney, in argument, was allowed to give an instruction a construction which deprived it of any prejudice to appellant, saying that if such construction was not right the court would correct him, and no correction was made, appellant cannot complain of the instruction, though without such construction it might have proved misleading.

Appeal from Crawford Circuit Court.

JEPHTHA H. EVANS, Judge.

*Chas. E. Warner, Ed. H. Mathes, J. B. McDonough* and *Rose, Hemingway & Rose* for appellant.

1. When an attachment is sued out under an honest and reasonable belief that plaintiffs are entitled to it, then they act without malice, and are not liable. 98 U. S. 195, 196; 111 Mass. 497, 498. One who acts honestly is not guilty of malice, though he may not act reasonably. Webb's Pollock on Torts (Enl. Am. Ed.), p. 392. This is not in conflict with the principle that malice may be presumed from want of probable cause. The presumption is not one of law, but of fact merely. Cooley, Torts, p. 185 and n. 3; 98 U. S. 187. Legal malice is made out by showing that the proceeding was instituted from any improper or wrongful motive. Cooley, Torts, p. 185. And hence legal malice is not made out where an honest motive is shown. 4 Fed. Cases, 2170; S. C. Taney, 244; 98 U. S. 187.

2. What facts constitute probable cause is a question of law for the court; whether they are proved is a question of fact for the jury. 1 Wend. 345; 58 Mo. App. 35; 33 Minn. 192; 17 Fed. Cas. 993; 18 W. Va. 35; 39 Mo. 40; 98 U. S. 187; 11 Fed. Rep. 129; 1 Greenl. Rep. 135; 3 Allen, 393; 55 Fed. Rep. 217; 55 N. W. Rep. 45; 21 At. Rep. 556.

3. The seventh instruction given is full of errors in defining the measure of damages. (1) There was no proof in regard to "injury to the goods." 58 Ark. 195. (2) It did not restrict the recovery for injury to credit and business standing to the damage shown by the evidence to have resulted in that particular, nor to the amount claimed in the complaint, and there was no proof of such injury. (3) It stated that plaintiffs were entitled to recover for *"all expenses"* they were

put to by the attachment. 78 Mo. 296. (4) It left the assessment of vindictive damages to the unrestricted pleasure and free will of the jury, and submitted as an element of damage loss of time, which was not alleged.

4. A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the person accused is guilty of the offense charged, constitutes probable cause. 70 Ill. 408; 53 Ill. App. 53; 58 Mo. App. 37; 16 Minn. 161; 33 Minn. 189; 17 Fed. Cases, 993; 55 Fed. Rep. 217; 55 N. W. Rep. 45; 21 At. 557. See also 4 Cush, 238-9; 111 Mass. 497-8; 1 Greenl. 135; 57 Wis. 510.

5. It was error to admit testimony as to what could be made on notes and accounts in from one to two years. 34 S. W. Rep. 39. The true test was their market value.

6. Authority to act for another in business implies only authority to do lawful acts. 57 Wis. 510; 51 Ark. 545; 54 *id.* 572; 9 Johns. 118; 83 N. Y. 525-6.

7. Foster & Company are not liable for the malicious acts of their attorney, unless adopted or ratified by them. 2 Addison, Torts, sec. 872; 2 Hilliard, Torts, 411; 35 Ill. App. 182; 27 *id.* 410; 3 *id.* 41; 7 Ala. 628-9; 69 *id.* 378; 73 Ala. 195; Taney's C. C. Dec. 244; 4 Fed. Cas. 761; 69 Iowa, 472-3; Drake, Attachment, p. 182; 43 Tex. 50; 57 *id.* 465; 32 S. W. Rep. 142; 9 Johns. 118; 1 B. Mon. 96; 63 N. Y. 181; 147 U. S. 101; *ib.* 109, 110. This last case settles the law that while the principal cannot escape liability for the tort of his agent merely because it was wilful, he cannot be held, because of its wantonness, for more than actual damages, unless he participated in the evil intent. See 9 Heisk. 52; 42 Wis. 654; 56 N. Y. 44; 10 Wis. 388; 57 Wis. 510, 577; 3 R. I. 88; 26 At. Rep. 193, 196; 62 Fed. Rep. 469, 480; 16 Mich.

447; 21 Vroom, 481. There is no proof of injury to credit. 9 So. Rep. 818. The verdict is excessive.

*Oscar L. Miles* for appellees.

1. If an attachment is sued and levied without probable cause, and afterwards, before the institution of a suit for damages for the wrongful and malicious suing out of same, the attachment proceeding terminates in favor of defendant, a suit for malicious prosecution will lie against the principal. 14 Am. Dec. 600; 35 Md. 196; 36 *id.* 255; 45 *id.* 204; 16 U. S. 765; 25 *id.* 116; 13 *id.* 1036; 33 Ark. 316; 32 *id.* 770, 170; 62 Mo. 56. Mere suspicions, without any reasonable ground for believing them to be founded in fact, will not amount to probable cause. Real belief and reasonable grounds must unite to afford a justification. 12 Am. Dec. 265; 12 Pick. 324; 38 Me. 523; 52 *id.* 502; 111 Mass. 492; 66 Me. 202, 204.

2. The attorney who made out the affidavit and brought the suit maliciously and without probable cause, at a time when he has general authority to act for his client, is jointly liable. 56 Mo. 89; 36 Cal. 262; 35 Ala. 349; 5 B. Mon. (Ky.) 544; 7 Blackf. (Ind.) 234; 37 Md. 369; 38 Am. Dec. 228; 35 *id.* 204; 36 *id.* 583. The plaintiff has the means of knowing personally, or of being well advised whether he has probable cause for instituting the suit. 15 Ark. 355. See 32 *id.* 770, 170; 33 *id.* 316; 37 *id.* 162, for the reason of the rule that if there is no probable cause the jury are justified in presuming malice.

WOOD, J. This is a suit for malicious attachment. The complaint alleges in substance, that the firm of Pitts & Zeiler, merchants, owed the firm of J. Foster & Company the sum of $613.85, and that J. Foster & Company and Ed. Mathes, their attorney, maliciously and without probable cause had suit brought, and an attachment sued out and levied upon the property of

Pitts & Zeiler, which was dismissed, and terminated in their favor. They allege and pray for damages in the sum of $5,000 as follows: $1,000 for loss of business, $3,000 for injury to credit, $200 for expense of defending the suit, and $800 punitive. The answer denied all the material allegations of the complaint. The trial resulted in a general verdict for $3,000, and judgment accordingly, against all of the appellants.

Pitts & Zeiler, a firm of merchants at Webb City, in Franklin county, owed the firm of J. Foster & Company, jobbers, composed of Foster, Berry and Clarkson, the sum of about $600, about $400 of which was due the 1st of January, 1894. Foster sent the claim of his firm to Ed. Mathes, an attorney at law, living at Ozark, in Franklin county, a short distance from Webb City. Foster's instructions to Mathes were: "In case of any danger protect us." On the 1st of January, 1894, Mathes, without the knowledge of Foster & Company, brought suit, and had an attachment issued and levied upon a stock of merchandise of Pitts & Zeiler. Three days thereafter, Foster had Mathes to dismiss the suit, at Foster's cost.

Upon the questions of malice and want of probable cause, we would not disturb the verdict of the jury upon the evidence as to Mathes, and it is unnecessaay to set it all out as it affects him. Such of it as may be pertinent in passing upon the law will be recited.

1. "Malice" and the "lack of probable cause" are not convertible terms. Neither follows as a legal presumption from the other. The jury may infer malice, as a fact, from proof of want of probable cause; but they cannot infer a lack of probable cause from proof of malice. Both must be proved. Honesty of purpose precludes malice. Malice is any improper or sinister motive for instituting the suit. It need not spring from

*Burden of proof in malicious prosecution.*

*Malice defined.*

any spirit of malevolence, nor be prompted by any malignant passion. *Lemay* v. *Williams*, 32 Ark. 166; Cooley, Torts, p. 185; *Spengler* v. *Davy*, 15 Grat. 381; *Burkhart* v. *Jennings*, 2 W. Va. 242; *Commonwealth* v. *Snelling*, 15 Pick. 337; *Mitchell* v. *Wall*, 111 Mass. 492; *Stewart* v. *Sonneborn*, 98 U. S. 187; *Williams* v. *Hunter*, 14 Am. Dec. 597, note; *King* v. *Colvin*, 11 R. I. 582; *Bozeman* v. *Shaw*, 37 Ark. 160; *Frowman* v. *Smith*, 12 Am. Dec., 266, notes; Jaggard, Torts, 614–26.

Probable
cause defined.
Many authorities hold that probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that there were grounds for the attachment. *Davie* v. *Wisher*, 72 Ill. 262; *Barrett* v. *Spaids*, 70 Ill. 408; *Munns* v. *DeNemours*, 17 Fed. Cas. 993; and other authorities cited in appellant's brief. Others hold that belief and reasonable grounds must unite to constitute probable cause. *King* v. *Colvin*, 11 R. I. 584; *Spengler* v. *Davy*, 15 Grat. 381; *Burkhart* v. *Jennings*, 2 W. Va. 242; Newell, Malicious Pros. p. 252; *Frowman* v. *Smith*, 12 Am. Dec. 266, and note. Cooley on Torts, * pp. 183, 211, and note.

The distinction may be more metaphysical than real. But we approve the latter rule. Under it, one, when sued for malicious attachment, could not say: "True, when I sued out the attachment, I had no knowledge of facts which would make a cautious person believe that the attachment would be sustained, and I did not so believe, but since that time facts have come to my knowledge which, had they then been known by me, would have justified such belief. Therefore there was probable cause." *Spengler* v. *Davy, supra.* In civil actions no public interest is involved. "The plaintiff has the means of knowing personally, or being well advised" of the facts (*Sexton* v. *Brock*, 15 Ark. 345); and it is but just that he should be required to believe

the facts, as well as that the facts themselves should exist, constituting probable cause. Cooley on Torts, p. 211. In this view, wherever there is a dispute about the facts, it is proper for the court to submit the whole question to the jury, telling them what facts constitute probable cause, and leaving them to determine whether such facts are established. *Chrisman* v. *Carney*, 33 Ark. 316. The court's charge upon malice and probable cause, as embodied in its fourth, thirteenth and fifteenth instructions, is in harmony with the law as announced *supra*. The fifth is not clearly expressed, and may as well have been omitted. But, taken in connection with the others, it could not have been misleading. The fourth, thirteenth and fifteenth given by the court present substantially the same question as was asked by appellants in their fifth and eighth requests, which the court refused. Therefore, if the instructions given were erroneous, appellants should not be heard to complain.

2. The court, in the latter part of its fourteenth instruction, told the jury that "if J. Foster & Company, previous to the bringing of the attachment suit, left their accounts with E. H. Mathes, as their attorney, with authority to bring an attachment suit against Pitts & Zeiler, without first themselves being informed of the ground thereof, and Mathes thereafter brought the attachment suit maliciously and without probable cause, both Mathes and J. Foster & Company are liable." When an agent of an individual acts maliciously, he is presumed to act without authority; and, while the agent is liable, the principal is not, for punitive damages, unless it appear that he aided, adopted, or ratified the malicious act of the agent with full knowledge of the facts. *Kirksey* v. *Jones*, 7 Ala. 622; 1 Shinn, Att. sec. 374.

Liability of principal for acts of agent.

Mathes was acting within the scope of his authority as an attorney at law (*Kirksey* v. *Jones*, *supra*), and of the authority given him expressly by his principals—to "protect' in case of trouble"—when he sued out the attachment, although by so doing, "if there was no danger," he was abusing his authority by going contrary to instructions. Therefore, his principals are liable to appellees for any actual damages growing out of the attachment. *Railway Co.* v. *Hackett*, 58 Ark. 381; *Lake Shore, etc., Ry. Co.* v. *Prentice*, 147 U. S. 101; and authorities cited. There is no proof of any malice upon the part of J. Foster & Company. They knew nothing of the attachment until it had been served, and, with the first opportunity, dismissed same at their cost. The verdict was general. It is impossible to tell how much as punitive damages entered into it. But the jury were authorized by it to assess such damages, and it is reasonably certain from the amount of their verdict, under the proof, that punitive damages were assessed. The part of the instruction quoted is erroneous and prejudicial as to J. Foster & Company. It follows also that the verdict as to them was contrary to the court's eleventh instruction, as well as the latter part of the fourteenth which we have set out.

Instruction as to damages disapproved.

3. The court's seventh instruction was as follows : " The measure of damages in this case, if the jury find for plaintiffs, is that they are entitled to recover *for injury to the goods,* * * * *and for all expenses to which they have been subjected by reason of the attachment,* and also such further sum as in the judgment of the jury plaintiffs are entitled to as vindictive or exemplary damages * * * But plaintiffs are not entitled to exemplary damages unless they sustained actual damages. And by actual damages *is meant injury to plaintiff's goods;* * * * * *or were subjected to expenses in loss of time* or payment of money in preparing their

defense to the attachment suit.   But if any one of these
elements of actual damages occurs, then vindictive dam-
ages may also be allowed, if the jury think the plaintiffs
are entitled thereto from the evidence."   The instruc-
tion should have limited the damages, in case of
recovery, to the various elements thereof in proof,
and to amounts justified by the evidence, and within the
sums claimed for each element or item of damage
alleged.   It does not do this.   The elements of "injury
to plaintiff's goods, and loss of time in defending
attachment suit," which it introduces, are foreign to the
proof.   Yet the instruction assumes the existence of
these elements of damage, and requires the jury to con-
sider them, if they find for plaintiffs.   Any verdict as
to these would be abstract, and the amount of damage
therefore discretionary and speculative.   *Railway Co.*
v. *Barry*, 58 Ark. 198.   There is no guide or limitation
as to the amount of damages to be assessed.   Where a
verdict is general based upon a complaint claiming vari-
ous elements of actual damages in certain amounts, and
also for punitive damages in a certain amount, an
instruction which allows the jury to assess vindictive
damages in such "sum as in their judgment plaintiffs
are entitled to" is erroneous.   Their judgment as to the
amount should be based upon the evidence, and in no
event should the amount be above that laid in the com-
plaint.   Unless thus restricted, their judgment might
approve an amount in excess of that claimed, and one
that might be oppressive.

4.   The true test, in determining whether an attach- <span style="float:right">Evidence as<br>to value of</span>
ment debtor, who has shipped property out of the state, property.
has enough left to satisfy the claims of his creditors is
to ascertain whether the property remaining at the time
of the attachment, at its fair market value, is sufficient.
*Nesbit* v. *Schwab Clothing Co.*, 62 Ark. 22; S. C. 34 S.
W. Rep. 79.   Evidence as to what per cent. of notes and

accounts could be collected in one and two years after the attachment suit was begun did not show their market value at the time of the attachment. The witness, if he knew, should have been required to testify as to the market value of the notes and accounts at the time of the attachment. Having done this, he might then have been questioned as to how he arrived at such value. The testimony on this point, as elicited, was improper. The court's twelfth and seventeenth instructions are erroneous, inasmuch as they make the question of the sufficiency of the debtor's property remaining in the state to pay debts at the time of the attachment depend upon what the property will bring "by process of law." *Nesbit* v. *Schwab Clothing Co.*, *supra*. These would not be prejudicial, however, unless it could be said that appellee's property would be worth more at forced sale than at its fair market value. The reverse is generally true.

When instruction not prejudicial.

5. The twentieth instruction, if it was intended, as stated by the trial court, to apply only to the "general question of solvency, affecting the plaintiffs' right to make a voluntary conveyance of their property," was abstract, and calculated to mislead, for the right of plaintiffs to make a voluntary conveyance was not in issue, and there was no proof upon the subject. And it was not incumbent upon appellants to show that appellees were insolvent at the time of the attachment, in order to make good their defense. But one of the attorneys for appellants was permitted to construe the instruction to mean that appellees (plaintiffs) must have enough property in this state out of which all their creditors could make all their debts at the time of the attachment before they were legally solvent. When the attorney read the instruction, and put the above construction upon it, he told the

jury that the court would correct him if he was not correct, and the court did not correct him.    In view of this state of the record, we do not see that appellants were prejudiced by the instruction, or the court's refusal to amend same.

6.    The court's charge, except as herein indicated, was correct.    The ruling of the court was correct as to the confidential communication set up in the seventh and eight grounds of motion for new trial.

As there must be a new trial, it is unnecessary to discuss the question of alleged improper conduct and remarks of counsel in their arguments to the jury.    The law upon this subject has been often announced.    *Union Compress Company* v. *Wolf, ante,* p. 174, and cases cited.

For the errors indicated, reversed and remanded for new trial.