BETH *v.* HARRIS, EXECUTOR.

4-7664                                             188 S. W. 2d 119

Opinion delivered June 4, 1945.

*Elmer Schoggen,* for appellant.

*J. L. Shaver,* for appellee.

SMITH, J. A suit, No. 624-A, was filed to foreclose a deed of trust given plaintiff by defendants, Joe and Evelyn Evans, who filed an answer and cross-complaint against Robert Beth and Lottie Beth, husband and wife, praying the cancellation of certain deeds executed to Beth and his wife by the State Land Commissioner. A

decree was rendered December 17, 1942, cancelling these deeds, and ordering the foreclosure of the deed of trust. On February 17, 1943, a date subsequent to the term of court at which the decree was rendered, Beth and wife filed. this suit for the purpose of vacating this decree, upon the ground that the decree had been rendered as a result of an unavoidable casualty within the meaning of par. 7, of § 8246, Pope's Digest, which had prevented them from appearing and defending the suit. The relief prayed was denied, and this appeal from that decree presents only the question whether appellants' failure to defend was due to an unavoidable casualty.

When sued, the Beths filed a motion to quash the service of process upon them which motion was signed by S. A. Jones and Elmer Schoggen, as attorneys for Beth and his wife. This motion was overruled, whereupon an answer signed by Jones and Schoggen as attorneys was filed. In this answer it was alleged that the property in controversy, consisting of blocks 20 and 21, and block 53 in Brookfield's Northwest Addition to the City of Wynne, had forfeited to the state for the non-payment of taxes due thereon for the year 1931, and that these tax sales had been confirmed under the authority of Act 119 of the Acts of 1935 in a decree of confirmation rendered February 27, 1937; and that on October 30, 1936, Robert Beth had purchased from the state the two blocks first described and that on August 17, 1937, his wife had purchased the other block from the state. It was alleged by the Beths that more than the year allowed by law in which to attack the confirmation decree had expired, and that the confirmation decree had not been attacked. They alleged that on the faith of their deeds from the state they had paid taxes, and made valuable improvements for which they prayed compensation if their deeds were cancelled.

An answer to this pleading alleged that the purchase from the state by Beth and wife was for the use and benefit of Annie Evans, the foster mother of Joe Evans, who, when a child three years old, had been given to Annie and Dudley, her husband, and reared by them, and that Dudley was the half brother of Robert Beth.

Upon the issues thus joined testimony was taken by depositions in the taking of which the Beths were represented by Jones and Schoggen, but the latter testified that he had not been employed and was not in fact an attorney in the case, and that he took this testimony as an accommodation to Jones, the only authorized attorney, and that he did this because Jones was in feeble health. He further testified that he was first employed as an attorney in the case after the rendition of the decree which this proceeding seeks to vacate.

It appears that all the testimony had been taken except that the Beths testified as to certain taxes paid, and improvements made, for which they had receipts not offered when the depositions were taken. It was stipulated that these receipts might be attached to the depositions subject to the right of cross-examination thereon, but they were never filed and never became a part of the record.

Depositions on behalf of Evans were taken June 13, 1941, and on January 10, 1942, the attorney for Evans wrote Jones that if his proof was not taken by January 26th, he would insist on a decree on that date.

On January 29, 1942, the depositions of Robert Beth and of Lottie Beth, his wife, and of one James L. Gardner, above referred to as having been taken on behalf of the Beths, were taken by Jones, and it was these depositions which were to be completed by filing certain receipts.

On September 22, 1942, the attorney for Evans wrote Jones as follows: ''Our court will convene over here Monday, September 28, 1942, and I am anxious to get the Joe Evans case submitted. I recall that you were to submit certain exhibits to Lottie Beth, and I fail to find copies of these exhibits. If you will forward me original depositions I will submit the entire record to Judge Hutchins.''

On September 24, 1942, Jones replied to this letter and stated that he had a case for trial in the federal court on September 28th, and suggested that the case be

submitted with leave to file briefs. On October 2, 1942, the attorney for Evans wrote Jones that he had the case submitted September 28th, and stated that if the depositions and exhibits were filed with the clerk he would mail them to the chancellor.

Jones did not file his depositions and on October 30, 1942, Evans' attorney wrote him that the depositions had not been filed and that he would ask for a decree if they were not filed by November 4, 1942.

The record was submitted to the chancellor on December 4, 1942, together with copies of the letters exchanged by the attorneys, and on December 17, 1942, a decree was rendered foreclosing the deed of trust and cancelling the deeds from the state to Beth and his wife.

On January 23, 1943, a copy of the decree was mailed to Jones and a new term of the court convened the following Monday. On January 28th, the wife of Jones replied to the letter transmitting a copy of the decree, in which she stated that her husband was very ill, both mentally and physically, and had been so for more than a month, but that she would call his attention to the matter as soon as he was able to hear it. Jones at that time was confined to his room, and never recovered. Death occurred March 28, 1943.

To sustain this plea of unavoidable casualty arising out of the physical and mental incapacity of attorney Jones, the deposition of Dr. G. W. Ish was taken. The death certificate of this doctor recited that "I hereby certify that I attended the deceased from November 13, 1942, to March 28, 1943." This doctor expressed the opinion that Jones' incapacity began not later than September 15th, but when shown the letter from Jones above referred to, dated September 24th, admitted that "it is a very intelligent letter." It was in this letter that Jones stated he had a case to try in the federal district court.

Dr. H. A. Powell, a dentist, whose office, like that of Dr. Ish, was in the same building and on the same floor with that of Jones, expressed the opinion in his deposition that Jones became mentally incompetent. He was asked: "Well, I know, but you are saying it was in Sep-

tember, 1942, that he was mentally incompetent—are you saying that?" And the witness answered: "Oh, no; I didn't say that. I said he left here and only made one trip, I think, back here. When he took down the last time, now, when that was, I am not sure about it."

The official court reporter of the federal court testified that he knew Jones well, and had known him for many years; that the trial of the case in the federal court to which reference has been made, began September 28, 1942, and was completed October 2nd, following, and that Jones was present at the trial. Jones was not the senior or leading counsel in the case, but was present during the trial and during its progress witness conversed several times with Jones, who while very frail and feeble, appeared to be in full possession of his mental faculties.

There is no suggestion that any advantage of Jones was taken by opposing counsel. The contrary is conclusively shown. The depositions which Jones had taken were found in his files, but the exhibits had never been attached. This may account for the failure of Jones to file the depositions, and if so, the negligence and inattention of the clients themselves was responsible for the failure to file the depositions. However, the clients are bound by the inaction and inattention of their attorney. At § 78, Chap. Attorneys, 5 Am. Jur. 306, it is said: "The courts will not usually relieve a party against the fault or negligence of his attorney, unless it is an extreme case where a clear failure of justice would otherwise result, particularly if the client is also negligent where, by diligence, he might have avoided the consequences of his attorney's negligence."

Here we are asked to vacate a judgment after the expiration of the term at which it was rendered, and to do so because of unavoidable casualty. In the case of *Lawson* v. *Bettison,* 12 Ark. 401, it was held that when a person employs an attorney, he is concluded by his acts or omissions, where no fraud or unfairness is made to appear.

In the case of *Scroggin* v. *Hammett Grocer Co.,* 66 Ark. 183, 49 S. W. 820, it was held that equity would not

grant relief against a judgment at law upon the ground that counsel of the defeated party negligently omitted to call up a motion for a new trial in order to have it passed on, under the mistaken impression that such motion had been overruled. See, also, *Corney* v. *Corney,* 97 Ark. 117, 133 S. W. 813; *Merchants' & Planters' Bank* v. *Ussery,* 183 Ark. 838, 38 S. W. 2d 1087. In this last cited case, which was a proceeding under subdiv. 7, § 6290, C. and M. Digest, now appearing as par. 7, § 8246, Pope's Digest, it was said on the authority of the case of *Blackstad Merc. Co.* v. *Bond,* 104 Ark. 45, 148 S. W. 262, that negligence on the part of one's own attorney is not sufficient to justify setting aside a judgment.

We conclude that the action of the court in refusing to vacate and set aside the decree of December 17, 1942, is correct and that action is affirmed.