Linda PETERSON *v.* WORTHEN BANK & TRUST
COMPANY, N.A.

88-2                                                    753 S.W.2d 278

Supreme Court of Arkansas
Opinion delivered July 11, 1988

*The McMath Law Firm, P.A.*, by: *Eileen W. Harrison*, for appellant.

*Wright, Lindsey & Jennings* by: *Judy Simmons Henry*, for appellee.

STEELE HAYS, Justice. Linda Peterson's complaint against Worthen Bank & Trust Co., N.A., for abuse of process was dismissed on motion for summary judgment and she has appealed. Finding issues of material fact to be decided, we reverse and remand.

Worthen obtained a judgment against Ms. Peterson and her former husband for $2,788. Worthen's attorney, Mr. Fred Bosshart, obtained six writs of garnishment between October, 1983 and July, 1984 against Ms. Peterson's employer. In November, 1984 a seventh writ was issued against her bank account. On some of the garnishments, hearings were conducted to determine whether Ms. Peterson's wages were exempt under the Arkansas Constitution and an exemption was upheld. In each instance the garnishment was superseded either by agreement or by court order.

In July, 1985, Ms. Peterson filed this suit for abuse of process and Worthen moved for summary judgment, which the trial court granted upon a finding that a client cannot be liable for the acts of an attorney in the absence of evidence that the client directed the acts or affirmatively acquiesced in them.

I

The first point of contention is whether Ms. Peterson demonstrated that there are issues of material fact sustaining a cause of action for abuse of process. *Miskimins* v. *City National*

*Bank of Ft. Smith*, 248 Ark. 1194, 456 S.W.2d 673 (1970).

Abuse of process is defined by The Restatement of Torts, *Second*, § 682:

> One who uses legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed, is liable to another for the pecuniary loss caused thereby.

Prosser and Keeton describe the tort as "now well established," and containing two elements: an ulterior purpose and a willful act in the use of process not proper in the regular conduct of the proceeding. Prosser and Keeton on Torts, 5th Ed., § 121. The gist of the tort is misapplying process, justified in itself, "for an end other than that which it was designed to accomplish." *Id.* at 897. "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort." *Id.* at 898.

Ms. Peterson relies on two components of proof—first, that the issuance of successive garnishments which repeatedly resulted in the release of her property as exempt is evidence from which a jury could infer an improper motive by the bank. She refers to *Baxley* v. *Laster*, 82 Ark. 236, 101 S.W. 755 (1907), and *Lewis* v. *Brudine*, 240 Ark. 821, 402 S.W.2d 390 (1966). Both cases recognize a cause of action for abuse of process. In *Lewis* we affirmed a judgment on behalf of a plaintiff who was garnished on a debt owed by her husband and in *Baxley* we reversed a decree ordering a perpetual injunction against judgment creditors bringing garnishment suits. The *Baxley* opinion contains this relevant language:

> If they [judgment creditors] were using the writs of garnishment for a lawful purpose and in the manner prescribed by statute, he had no right to complain. But if he employed process, legal and properly issued, wrongfully and unlawfully for a purpose which by law it was not

intended to effect, he was guilty of a malicious abuse of process and would be liable in damages for the abuse. [citations omitted].

Ms. Peterson also relies on an affidavit from Mr. Don Barnes, stating, "I have had a great deal of experience handling debtor litigation in my practice with Central Arkansas Legal Services. In my experience, creditors have never initiated repeated garnishments as was done by Worthen Bank & Trust in Ms. Peterson's case."

In *Czap* v. *Credit Bureau of Santa Clara Valley*, 7 Cal.App.3d 1, 86 Cal. Reptr. 417 (1970) the repeated issuance of writs of garnishment with knowledge that the judgment debtor's wages were exempt was sufficient to sustain a cause of action for abuse of process. However, we are not convinced of the soundness of that decision and are unwilling to adopt it. Nor is it necessary that we do so, because the appellant relies on the testimony of Mr. William Luppen that while an attorney for Central Arkansas Legal Services he appeared on Ms. Peterson's behalf at garnishment hearings on March 12 and December 10, 1984 and on one occasion Mr. Fred Bosshart stated that he intended to get Ms. Peterson fired from her job with Universal Life Insurance Company and had already spoken with an official at that company's Memphis office. Mr. Bosshart denies the assertion, but on review of summary judgment, we assume the allegation to be true, and decide only whether a fact is material and in dispute. Obviously it is in dispute and as to materiality it hardly need be said that the avowed use of garnishment as a means of effecting the discharge of a judgment debtor could be found to be an improper purpose for the use of process.

## II

We turn to the question which prompted the trial court to grant summary judgment, i.e., whether a client can be held accountable for the acts of an attorney which prove to be injurious to a third party where there is no evidence that the client directed the acts or acquiesced in them. The answer, we believe, is in the affirmative.

The rules of agency generally apply to the relationship of attorney and client. The editors of 7A C.J.S. *Attorney &*

*Client* § 180, provide this summary:

> [U]sually the general rules of law which apply to agency apply to the relation of attorney and client. [Citing *White & Black Rivers Bridge Co.* v. *Vaughan*, 183 Ark. 450, 36 S.W.2d 672 (1931)]. Accordingly, the omissions, as well as commissions, of an attorney are to be regarded as the acts of the client whom he represents, and his neglect is equivalent to the neglect of the client himself. [Citing *Blackstad Mercantile Co.* v. *Bond*, 104 Ark. 45, 148 S.W. 262 (1912)]. Attorney's acts are attributed to the client. Thus, in the absence of fraud, the client is bound, according to the ordinary rules of agency, by the acts, omissions, or neglect, of the attorney within the scope of the latter's authority, [citing *Riley* v. *Vest*, 235 Ark. 192, 357 S.W.2d 497 (1962), and *Beth* v. *Harris*, 208 Ark. 903, 188 S.W.2d 119 (1945)] whether express or implied, apparent or ostensible. In other words, whatever is done in the progress of the cause by such attorney is considered as done by the party, and is binding on him . . .

We applied these principles recently in *Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986), affirming a judgment against a client based on the attorney's tortious conduct in the course of his representation, and irrespective of proof of knowledge or acquiescense by the client. W. Seavy, *Agency*, § 91 (1964).

■ The attorney in this case was employed to collect the judgment. The successive garnishments were allegedly directed by the bank and specifically authorized by the bank. A bank employee allegedly attended every hearing on the issue of exemption. There is no proof that the bank had knowledge of any objective by its attorney relative to Ms. Peterson's employment, but so long as the attorney is acting within the scope of employment and in accordance with what is believed to be the client's interest, albeit mistakenly, that suffices. *See Hewes* v. *Wolfe*, 339 S.W.2d 16 (N.C. App. 1985); *Flight Kitchen, Inc.* v. *Chicago Seven-Up Bottling Co.*, 317 N.E.2d 663 (Ill. App. 1974); *Jaquity* v. *Stanger*, 310 P.2d 805 (Ida. 1957); *Merchants and Planters Bank & Trust Co.* v. *Ussery*, 183 Ark. 838, 38 S.W.2d 1087 (1931); *Foster* v. *Pitts*, 63 Ark. 387 (1897).

■ The dissenting view holds that the case should be

affirmed because appellant failed to plead an agency relationship between Worthen Bank and Mr. Fred Bosshart. It is clear from the remarks of the trial court that his reason for dismissing the action was not on that ground, but on the mistaken conclusion of law that a client could not be liable for the acts of an attorney, "absent the direction or at least affirmative acquiescence by such client." We decline to affirm a summary judgment on a basis not relied on here or below by either the parties or the trial court. To do that we would have to assume that had the appellant amended her complaint under ARCP Rule 15(a) it would have been stricken on grounds of prejudice or causing undue delay. Or had the appellant moved to conform the pleadings to the proof, which can be done up until judgment under Rule 15(b), it would have been denied. Since these steps, particularly the former, are allowed rather liberally, we decline to assume on review of summary judgment that appellant would have been denied the opportunity to plead agency, should that be necessary.

Appellee has asked for costs of $858.50 in preparing a second brief necessitated by the appellant's having obtained leave to file a substituted Abstract and Brief. The motion for costs is granted.

Reversed and remanded.

DUDLEY, J., not participating.

HICKMAN, J., dissents.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. Appellant appealed from the trial court's summary judgment order, but failed to abstract that order and some other matters that the appellee believed were fatal to appellant's appeal pursuant to Ark. Sup. Ct. R. 9. In denying the appellee's motion to affirm under Rule 9, this court allowed the appellant to supplement her abstract and now awards costs to the appellee because second briefs were required as a result of the appellant's having obtained leave to file a substituted abstract. Previously, this court has held repeatedly that a flagrant violation of Rule 9 occurs when the order or decree is not abstracted.

As I understand what the court has done, an appellant may now correct his or her abstract of record after the appellee points

out a flagrant violation of Rule 9, but the appellee will be entitled to the costs incurred which result from the appellant's abstracting error; the appellee may not, however, be entitled to an affirmance. Because I think Rule 9 is too harsh, I agree with the court's decision in this cause and would hope that this is some indication that the court will modify Rule 9 with the idea of providing a better means than a summary affirmance of an appeal to ensure a sufficient record is provided by parties or their attorneys for this court's review.