HARNISCHFEGER SALES CORPORATION *v.* RAMEY.

4-3862

Opinion delivered May 13, 1935.

DeWitt Poe, Moore & Burke and G. D. Walker, for appellant.

Brewer & Cracraft, for appellee.

SMITH, J. This cause was tried in the court below on an agreed statement of facts, from which we copy the following controlling recitals.

On January 24, 1929, Alex Ramey made a contract with the Harnischfeger Sales Corporation, hereinafter referred to as appellant, wherein he agreed to purchase one Model 600 P. & H. M. A. N. Diesel Dragline Machine with Boom, 1,500 Watt Kohler Light Unit, and Dragline Bucket complete with teeth, for a price of $18,812. The purchase price was to be paid as follows: $3,000 evidenced by note due April 25, 1929, and $15,812 evidenced by seventeen notes of $875 each, and one note of $937, the first note falling due March 15, 1929, and the remainder one each month thereafter.

The contract was one of conditional sale, title being retained by the vendor until purchase money paid in

full, and the vendee agreed not to remove the machinery from the county where it was originally installed without the vendor's consent. The contract provides that, in the event of default in payment, the vendor might declare the balance of the indebtedness due and payable and repossess the machinery. The machinery was delivered to Ramey shortly after the sale near Chatfield, Arkansas, but some time thereafter was removed to Louisiana with the vendor's consent.

In the early part of 1931 Ramey, who was then in Louisiana, bought a second machine from appellant, this being a Model 700 Dragline. In that purchase there was an outright sale, and the vendor took a chattel mortgage on the machine to secure the unpaid balance of purchase money. The mortgage was executed at Monroe, Louisiana, and showed an unpaid balance of $17,575.

Ramey continued to use both the first machine (which will hereinafter be referred to as the Model 600 machine) and the second machine also (which will be referred to as the Model 700 machine) until the fall of 1933, at which time he was involved in financial difficulties, and was considerably in arrears in the payments on both machines. In October, 1933, Ramey, having about completed his work in Louisiana, was negotiating with Lewis-Chambers Construction Company, Inc., hereinafter referred to as the Lewis-Chambers Company, to contract for levee work in the Laconia Circle Section of Desha County, Arkansas, the Lewis-Chambers Company having at that time a contract with the United States Government for a large amount of work at that point.

To the end that Ramey might secure the consent of appellant to the removal of the machines from Louisiana, as well as the assurance that he would be allowed to retain the machines for the work in Arkansas, he began negotiations with appellant. After some preliminary negotiations, appellant's agent on October 24, 1933, sent a telegram to Ramey as follows:

"Model 600 balance $1,700 plus interest from January this year, Model 700 balance $10,200, plus interest from March 15, 1931. Understand you plan pay $1,000 now, $1,000 November, $1,000 December, $1,000 January.

When we have received $3,000 will release Model 600. While this will lessen our security glad to accommodate you, as we appreciate your high regard for your obligations."

On October 26, 1933, Ramey wired appellant's agent as follows:

"Finish rental job today. Have job for next year, if can deal with Lewis-Chambers. They will furnish $3,000, one this month, one next month and one December 10th. Necessary that you send remaining notes and papers on 600 to Whitney National Bank, New Orleans, for collection. They have agreed to this. Weather permitting we can pay $1,000 a month as we work after this. Wire if all right explaining these details."

On October 28, 1933, appellant wired Ramey as follows:

"Will send contract and notes Model 600 with certificate of release to Whitney National together with three one thousand dollar drafts on Lewis-Chambers, payable one at sight, second, November 10th, last December 10th, papers to be surrendered on payment of last draft. Wire if satisfactory."

After this telegraphic correspondence Ramey was permitted to move the machinery to Laconia, Arkansas, and a few days later, approximately November 5th, Ramey entered into a contract with the Lewis-Chambers Company to construct a portion of a levee at Laconia.

The October payment referred to in the telegrams was not made until November 20, 1933.

The Lewis-Chambers Company had no dealings with appellant, and had no knowledge of any negotiations between Ramey and appellant, nor did they know of the existence of the indebtedness due appellant by Ramey until after Ramey had made the contract with them, and had moved on the job at Laconia. A few days after the work began and about November 8, 1933, Ramey advised the Lewis-Chambers Company that he was involved, and that he had no funds to work with, and that certain of his creditors wanted payment, and he exhibited the telegram of October 24, 1933, copied above. This was the first knowledge that the Lewis-Chambers Company had

of Ramey's plan of payment. Thereupon the Lewis-Chambers Company agreed to advance to Ramey the sum of $12,673.53 to pay on past-due equipment notes and approximately $6,000 on open accounts (the amounts represented by Ramey as being necessary to satisfy his creditors), and to advance funds to carry on operations within the discretion of the Lewis-Chambers Company. Among the equipment indebtedness which the Lewis-Chambers Company agreed to pay was $1,000 to appellant. No agreement was made as to the other $2,000 referred to in the telegrams. Appellant had no knowledge of any other or different agreement between Ramey and the Lewis-Chambers Company other than as set forth in Ramey's telegrams herein referred to and copied above. These advances and all further advances were to be secured by a bill of sale or mortgage on all of Ramey's equipment, including both the 600 and the 700 Model machines, and this agreement was reduced to writing, which listed the items agreed to be paid. The agreement, which was a bill of sale in form, but a mortgage in fact, was executed and delivered to the Lewis-Chambers Company, dated November 20, 1933, covering both machines, and upon its execution the Lewis-Chambers Company immediately paid the bills as agreed.

On the same date the Lewis-Chambers Company forwarded to appellant their check for $1,000 as per agreement with Ramey, accompanied by the following letter:

"We enclose herewith our check in the sum of $1,000 as partial payment on the account of Alex Ramey as per your telegram of October 24."

There were no instructions as to the application of this payment from either the Lewis-Chambers Company or Ramey, and appellant, of its own accord, applied it to reduce the balance due on the 600 Model machine, and on November 24, 1933, appellant acknowledged receipt of the check, and also wrote Ramey advising him that the thousand dollars had been applied on the balance due on the 600 Model machine. After this payment was made there remained a balance due on the 600 Model machine of $789.90.

At the time appellant wrote Ramey, it also wrote the Lewis-Chambers Company the following letter:

"This will acknowledge receipt of your check in the amount of $1,000 as partial payment against our account with Alex Ramey.

"Two other installments of like amount are to be paid, and we are desirous of learning just how you want us to handle them. Are we to draw on a specified date for the next payment, or will this be remitted to us direct?

"Please also inform us just how you desire to have the release mailed to you—whether we are to attach this to a sight draft and leave it with a bank which you may designate, or if this release is to be prepared after the third installment has been paid."

On December 6, 1933, appellant wrote the Lewis-Chambers Company the following letter:

"This is to bring attention to the fact that we have had no response to our November 24th letter asking for the manner in which you desire to handle payments to be made for the account of Ramey & Moore.

"In accordance with this agreement a second payment of the $1,000 will be due on the 10th of this month, and, inasmuch as we have not heard from you in regard to whether a sight draft is to be made for this amount, we will ask that you send us your check direct, and when doing so furnish the information that we have asked regarding the final payment under the arrangement, and the surrender of the certificate of release."

On December 28, 1933, the Lewis-Chambers Company wrote appellant as follows:

"We enclose herewith our check No. 5837, for $789.90 which is the balance due on the note on the 600 machine. $4.55 of the amount of this check is for the interest on the balance of $789.90 from November 23 to December 28, 1933. This leaves $105.55 to be applied on the note due on Ramey & Moore's other machine.

"Please acknowledge receipt of this, and we again request that you write us giving in detail the notes and amounts of each note due you by Ramey & Moore."

Upon receipt of this letter the check which was inclosed was cashed, and appellant wrote the Lewis-

Chambers Company a letter dated December 30, 1933, as follows:

"Acknowledgment is made with thanks of the receipt of a check for $1,000 to be applied to the account of Alex Ramey. Inasmuch as the arrangements contemplated that payment in full on the 600 machine would not be considered made until a third installment of $1,000 had been paid, we have disregarded the application which you have suggested in your letter and are applying the $1,000 as follows:

"Balance unpaid on note originally due 10-14-31...$ 342.29
"Interest thereon due from 9-26-33 to 12-30-33...... 5.42
"Interest on a full note of $893.06 originally due
    11-14-31 from 3-14-31 to 12-30-33............................ 150.48
"On principal ............................................................................ 501.81
                                                    —————

"Total ..................................................................................$1,000.00

"In answer to the question as to the amount that will be unpaid on Mr. Ramey's account in addition to the balance on the 600 machine, which is as stated in your letter $789.90, and which will be paid in full out of your next payment of $1,000 there remains unpaid on the contract for the 700 B. Dragline No. 4299, two additional notes of $893.06 each and eight notes of $893.05, a total of $9,321.77."

On January 4, 1934, the Lewis-Chambers Company replied to this letter as follows:

"Replying to your letter of December 30th, we wish to advise you that we set forth in detail in our letter to you under date of December 28th, the manner in which we wished this payment by our check No. 5837 applied. We suggest that you give us your full cooperation in this matter, and make the application as set forth in the check, writing us that this has been done."

This $1,000 advanced by the Lewis-Chambers Company was charged to the account of Ramey, as was also the first payment of $1,000.

On July 13, 1934, appellant again wrote the Lewis-Chambers Company setting out at length a history of the entire transaction between it and Ramey, to which letter the Lewis-Chambers Company replied on July 25,

1934, reiterating their position that the Model 600 machine had been paid for by their second check.

No further payments were made, and appellant retook possession of the Model 700 machine without the Lewis-Chambers Company or Ramey disputing its right to do so.

On May 13, 1934, Ramey executed a deed of trust for the benefit of the Lewis-Chambers Company, in lieu of the bill of sale or mortgage given on November 20, 1933, covering both machines, to secure the indebtedness then due the Lewis-Chambers Company from Ramey, amounting to $43,402.96, and the indebtedness there secured now amounts to approximately $50,000. At the time of the payment of the $1,000 on December 28, 1933, the indebtedness was approximately $30,000.

Ramey failed to make the additional payment of $1,000, whereupon appellant brought suit in replevin to recover the 600 Model machine. In the complaint filed in that cause it was alleged that the balance due on this machine was $789.90 with interest. The present value of the machine was alleged to be $3,500.

Certain exhibits were attached to and made by reference a part of the agreed statement, which amplify the facts stated, but no review of these exhibits is required.

The case was submitted to the judge of the court sitting as a jury, and from a finding and judgment for the defendants Ramey and the Lewis-Chambers Company is this appeal.

For the reversal of this judgment we are cited to numerous cases which declare the law to be that the right to apply payments exists first in the debtor, and, if not exercised by him, then in the creditor. We do not review these cases, as we think they have no application to the facts stated.

Cases are cited also to the point that a third party does not have the right to demand that the parties debtor and creditor apply a payment in a manner beneficial to the third party, and that such third party will not be heard to protest if that application is not made. The insistence is that Ramey made the payments, because they were charged to him, and that, as Ramey had

no right to make an application thereof contrary to his contract with appellant, the Lewis-Chambers Company could not do so.

The fundamental error in this argument is that Ramey did not make the payments. It is true they were charged to him, but it is true also that the second check was tendered for a definite purpose, and for no other. There could have been no misunderstanding about the purport of the tender; nor is there any uncertainty as to its legal effect. Whatever Ramey's obligation to pay may have been, the Lewis-Chambers Company was under no such obligation. They were not indebted to appellant in any sum, and had the right to make any tender they pleased. Appellant had the option to accept the tender or to refuse it. It had no right to accept the check tendered for one purpose, and, after cashing it, to apply its proceeds to another purpose.

In the case of *Lake* v. *Wilson,* 183 Ark. 187, 35 S. W. (2d) 597, 38 S. W. (2d) 25, we quoted from the case of *Owens* v. *Chandler,* 16 Ark. 650, as follows: " 'The proposition that a debt, as between the debtor and creditor, can only be discharged by the payment by the debtor, or his agent, is a palpable solecism; for we are clear that the payment of a debt, no matter by whom effected, can be nothing more or less than its extinguishment as a demand, notwithstanding the concession, which we think proper to make, i. e., that the payment of a debt by a stranger to the debtor might not and would not possibly create and constitute the original debtor a debtor to the volunteer'."

In the case of *Market Produce Co.* v. *Holland,* 183 Ark. 713, 38 S. W. (2d) 317, a number of cases are cited on the effect of specific tenders, which cases will not again be reviewed. We there quoted from one of them in part as follows: " 'If the offer or tender is accompanied by declarations and acts so as to amount to a condition that, if the creditor accepts the amount offered, it must be in satisfaction of his demand, and the creditor understands therefrom that, if he takes it subject to that condition, then an acceptance by the creditor will estop him from denying that he has agreed to accept the

amount in full payment of his demand. His action in accepting the tender under such conditions will speak, and his words of protest only will not avail him'."

It does not appear, even inferentially, from the extended statement of facts, that Ramey borrowed the second thousand dollars from the Lewis-Chambers Company for the specific purpose of making a payment in accordance with the contract between himself and appellant. Nor does it appear that any misapplication or misappropriation of this money was made by the Lewis-Chambers Company.

The chattel mortgage executed to the Lewis-Chambers Company by Ramey gave them the right to make advances to Ramey in their discretion, and they had the right to make these advances, so far, at least, as appellant is concerned, for any purpose they pleased. They were under no contractual obligation to make payments to appellant for any purpose. They had the right to tender the balance due on the 600 Model machine, and that tender was made. There can be no doubt of the purpose of this tender, because the letter inclosing the check contained directions as to the application of the difference between the face of the check and the debt which the check was given to pay.

The judgment is correct, and must therefore be affirmed.