# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2985

_____

Milton Hambrice, Inc.,                    *

        *

    Plaintiff/Appellee,       *

        *  Appeal from the United States

       v.        *  District Court for the

        *  Western District of Arkansas.

State Farm Fire & Casualty     *

Company,        *

        *

    Defendant/Appellant.     *

_____

Submitted: April 14, 1997

Filed: May 23, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, FAGG and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

State Farm Fire and Casualty Company (State Farm) appeals from a judgment awarding Milton Hambrice, Inc. compensatory and punitive damages for a claim of malicious prosecution. Hambrice, a contractor on a restaurant remodeling project, was sued by State Farm in a subrogation action after a fire extensively damaged the restaurant during the remodeling. After State Farm later voluntarily dismissed its action, Hambrice brought this case. A jury returned a verdict for Hambrice, awarding it $312,000 in compensatory damages and $7,500,000 in punitive damages. The district court denied State Farm's post-trial motions, and judgment was entered in the amount of the verdict. We reverse and remand.

In the summer of 1991 Hambrice was hired by Jack Daugherty, the owner and a State Farm insured, to act as general contractor for the remodeling of a Western Sizzlin' restaurant in Magnolia, Arkansas. Daugherty later reassumed some of the work, including roofing and electrical work, but Hambrice continued to assist Daugherty on it. Hambrice estimated the amount of roofing material required and ordered those materials for Daugherty, checked the roofer's work on two occasions, and suggested to Daugherty that the perimeter neon lighting be removed after noticing that it could be damaged by the shingle removal. When the lighting was removed, the wires which supplied electricity to the lights were left exposed and dangling along the side of the building.

Shortly before the fire in the restaurant occurred, customers reported arcing and sparks from the exposed wires to two restaurant managers, Brian Daugherty (Jack's son) and Leigh Bass. On both occasions, David Arrington, the restaurant's regular electrician, was called to the scene. Arrington told Bass that the sparking was a danger and that the wires could be a fire hazard unless the circuit was left off. Power continued to be applied to the circuit every night, however, until the fire on September 18, 1991, which resulted in extensive damage to the restaurant.

State Farm paid Daugherty's claim and hired a fire investigator and an electrical engineer to look into the cause of the fire. They determined that hanging wires from the removed neon lights were the cause, and the fire investigator reported that "the neon tubes had been removed by Mr. Milton Hambrice . . . and David Arrington, an electrical contractor" so that new siding could be installed. A State Farm claims adjuster, Mike Tucker, also interviewed Daugherty and his son, Brian. The Daughertys told the adjustor that Hambrice was the general contractor on the remodeling

job and that an employee under Hambrice's supervision had removed the lights. In its investigation State Farm did not uncover the fact that Arrington had on two occasions warned Bass about the danger from the exposed wires and told him to make sure that power was not applied to the cables.

After receiving this information, Tucker sent letters to Hambrice and Arrington, which stated: "Our investigation indicates that you are responsible for this damage and we are therefore looking to you for reimbursement." When Hambrice received the letter, he called Tucker and denied responsibility for the fire. Arrington, who was also insured by State Farm, called his agent and told him that he had not removed the neon lights and had only been called to the restaurant about sparking of other cables in a different location from the fire's origin. Daugherty confirmed the facts in Arrington's statement, and State Farm did not pursue a claim against Arrington. State Farm then forwarded the case file to Mike Huckabay, an attorney who had extensive experience handling subrogation claims, for recommendations on whether to file suit against Hambrice. Huckabay responded that he "strongly recommended" suing Hambrice, and he filed a complaint in February 1992, alleging that Hambrice's negligence caused the fire at the restaurant.

State Farm and its attorneys remained unaware of Arrington's warnings about the wires until May 1993, when a State Farm attorney interviewed Bass. Bass told the attorney about Arrington's visits and warnings, and Arrington was deposed and affirmed that he had made strong warnings about fire danger from the exposed wires. After discovering this evidence, Huckabay recommended that State Farm voluntarily dismiss the lawsuit because Daugherty would probably be found to be more than fifty percent at fault, thus

precluding recovery under Arkansas comparative negligence law.  State Farm dismissed the suit without prejudice in June 1993.

Hambrice then sued State Farm for malicious prosecution, and after a jury trial, judgment was entered against State Farm.  On appeal, State Farm argues that Hambrice did not establish its malicious prosecution claim, that the district court made errors in admitting evidence and in the jury instructions, that Hambrice did not prove compensatory or punitive damages, and that excessive  damages were awarded.

In order to establish malicious prosecution under Arkansas law, a plaintiff must show: (1) a proceeding brought or maintained by the defendant against the plaintiff, (2) termination of the proceeding in favor of the plaintiff, (3) absence of probable cause for the proceeding, (4) malice on the part of the defendant, and (5) damages.  Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox, 922 S.W.2d 327, 331 (Ark. 1996).  A jury verdict will be upheld if the evidence, viewed in the light most favorable to the prevailing party, is sufficient for a reasonable jury to have found for that party.  Feibelman v. Worthen Nat'l Bank, N.A., 20 F.3d 835, 837 (8th Cir. 1994).

State Farm argues that Hambrice did not show that it lacked probable cause when it filed the subrogation suit.  Probable cause is "based upon the existence of facts or credible information" that would cause a person of ordinary caution to believe the defendant is liable.  Hollingsworth v. First Nat'l Bank & Trust Co., 846 S.W.2d 176, 178 (Ark. 1993).  The facts and circumstances surrounding the commencement and continuation of the suit are considered in determining whether probable cause existed.  Cordes v. Outdoor Living Ctr., Inc., 781 S.W.2d 31, 33 (Ark. 1989).

Probable cause is a question of law only when "the facts relied upon to create probable cause and the reasonable inferences to be drawn from the facts are undisputed." Cox v. McLaughlin, 867 S.W.2d 460, 464 (Ark. 1993).

The undisputed evidence at trial shows that at the time State Farm sued Hambrice it had information from the fire investigation that the fire had been caused by wires hanging from where neon lights had been removed and that Hambrice had been involved in removing the lights, was responsible for work which required the light removal, and had been working in the area where the fire started. The fire investigator had reported that Hambrice had been involved in removing the neon lights and that they had been removed to accommodate the installation of new siding on the restaurant, a job for which Hambrice was responsible. In interviews with Tucker, the Daughertys had identified Hambrice as the general contractor responsible for the remodeling of the restaurant and said that the neon lights were removed under Hambrice's supervision. Based on this undisputed evidence concerning the facts State Farm had when deciding to sue Hambrice, it was reasonable for State Farm to believe that Hambrice was responsible for the fire, and it therefore did not lack probable cause.

Hambrice argues that this evidence does not establish probable cause because if State Farm had conducted a more thorough investigation, it would have discovered evidence of Daugherty's negligence and the fact that Hambrice was no longer the general contractor for the remodeling project. Under Arkansas law, however, a plaintiff is not required to uncover all facts relating to a claim before filing suit unless the plaintiff is aware of contradictory facts giving rise to a duty to investigate further. Kansas & Texas Coal Co. v. Galloway, 74 S.W. 521, 525 (Ark. 1903).

In this case, there do not appear to be any facts giving rise to a duty to investigate further, but even if there were, the additional evidence which Hambrice claims State Farm should have uncovered does not necessarily negate State Farm's evidence of Hambrice's negligence. State Farm had evidence indicating that Hambrice was directly responsible for the fire, including evidence that Hambrice was working in the area where the fire started and was involved in removing the lights, and it did not need to rely on a theory that Hambrice was liable as a general contractor. Moreover, uncovering evidence of Daugherty's negligence would not have vitiated State Farm's probable cause concerning Hambrice's negligence. State Farm could still have had a submissible case in the subrogation action since under Arkansas law issues of comparative negligence are for the jury to decide. Lockett v. International Paper Co., 871 F.2d 82, 84 (8th Cir. 1989). Hambrice thus did not show that State Farm lacked probable cause to sue him for subrogation.

Even if probable cause had been lacking, Hambrice was also required to make a separate showing of malice in order to establish his malicious prosecution claim. Arkansas law defines malice as "any improper or sinister motive for instituting the suit." Hollingsworth, 846 S.W.2d at 178 (quoting Cordes, 781 S.W.2d at 33). Malice can sometimes be inferred from a lack of probable cause when the surrounding circumstances indicate a sinister motive. Cordes, 781 S.W.2d at 34; see, e.g., Farm Serv. Coop., Inc. v. Goshen Farms, Inc., 590 S.W.2d 861, 866 (Ark. 1979) (malice can be inferred when a company repeatedly sues another while lacking probable cause). Malice does not flow as a legal presumption from a lack of probable cause, however. Cordes, 781 S.W.2d at 33; Rogers v. General Elec. Co., 341 F. Supp. 971, 976 (W.D. Ark. 1972) (consider all facts disclosed in determining

whether malice can be inferred from a lack of probable cause) (quoting <u>Kable v. Clark</u>, 204 S.W. 748, 750 (Ark. 1918)).

Hambrice argues there is an inference of malice because of the lack of probable cause and State Farm's practice of pursuing subrogation claims. Undisputed evidence at trial showed that State Farm had credible facts on which it based its decision to sue Hambrice for subrogation, however. State Farm consulted a well-respected lawyer who had extensive experience in subrogation litigation, presented to him the facts it had uncovered in its investigation, and only sued after the lawyer strongly recommended it. Moreover, once State Farm discovered evidence of Daugherty's negligence, it dismissed its action, even though under Arkansas law its case could probably still have been submitted to a jury. <u>See</u> <u>Lockett</u>, 871 F.2d at 84. These facts do not indicate any improper motive in bringing or pursuing the subrogation claim, and Hambrice did not make a sufficient showing of malice to withstand a motion for judgment as a matter of law.

Since Hambrice did not establish the elements of malicious prosecution, State Farm was entitled to judgment as a matter of law.[1] The judgment of the district court is reversed, and the case is remanded with instructions to enter judgment in favor of State Farm.

---

[1]It is therefore unnecessary to discuss the arguments raised by State Farm related to the jury instructions, evidentiary rulings, and damages.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.