# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3307

_____

George M. Stokes,

      Plaintiff - Appellant,

v.

Southern States Cooperative,
Inc.,

      Defendant - Appellee.

Appeal from the United States
District Court for the
Eastern District of Arkansas

_____

Submitted: April 12, 2011
Filed: August 25, 2011

_____

Before LOKEN, BALDOCK,[1] and MURPHY, Circuit Judges.

_____

BALDOCK, Circuit Judge.

Plaintiff George Stokes appeals the district court's grant of summary judgment to Defendant Southern States Cooperative (SSC) on Stokes' claim of malicious prosecution under Arkansas law. The district court held Stokes failed to present evidence sufficient to withstand summary judgment on

---

[1] The Honorable Bobby R. Baldock, United States Court of Appeals for the Tenth Circuit, sitting by designation.

two of the five elements necessary to sustain his claim; namely, that in suing Stokes on a loan guaranty, SSC (1) lacked probable cause and (2) acted with malice.[2] Our jurisdiction arises under 28 U.S.C. § 1291. We review a grant of summary judgment de novo, applying the same legal standard as the district court. See McClendon v. Union Pac. R.R. Co., 640 F.3d 800, 803 (8th Cir. 2011). That is to say, viewing the evidence in a light most favorable to Stokes, we ask whether a jury properly could render a verdict in his favor upon such evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We answer that inquiry yes, and reverse and remand.

## I.

Stokes, an Arkansas landowner, rented farmland to Pat Roberts and his wife Karen, d/b/a/ P & K Farms, on a 25% crop share basis for the 1999 crop year. SSC, an agricultural supply co-op, sold crop inputs (*e.g.*, seeds, fertilizers, and pesticides) to Roberts on credit. Roberts executed two notes to SSC for $365,000.00 and $65,000.00. Stokes guaranteed those notes to a limit of $261,010.00.

Meanwhile, Roberts executed a cash note for $250,000.00 to another creditor, Statesman Financial Corporation. Stokes did not (nor did anyone) guarantee any part of Roberts' cash note to Statesman.[3] Formerly, Statesman was a wholly-owned subsidiary of SSC. During the period relevant to this dispute, however, SSC held only a 38% stake in Statesman. Apparently, SSC shared common offices, officers, and employees with Statesman.

---

[2] The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

[3] As a crop-share landlord, Stokes did not guarantee Roberts' cash loan because the use of cash, unlike the use of the inputs, is unrestricted.

Roberts began tendering payments from his crop sales to SSC in July 1999. Those payments, which totaled $482,092.36 through March 2000, were tendered in the form of checks payable to SSC, or to SSC and P & K Farms. *None* of those checks named Statesman as a payee. Nonetheless, without Stokes' prior knowledge or approval, SSC permitted Statesman to first apply Roberts' payments to Statesman's unguaranteed cash note.

Statesman credited Roberts $257,400.68, representing the principal amount of the note and $7,400.68 in interest. Only after Statesman's cash note had been satisfied did SSC begin to apply Roberts' payments to its own notes. As of March 22, 2000, a purported balance of $249,854.03 remained on the two notes that Roberts, the tenant farmer, had executed in favor of SSC, and Stokes, the landowner, had guaranteed to a limit of $261,010.00.

Soon thereafter, a regional credit manager for SSC informed Stokes that Roberts' crop proceeds were insufficient to pay the debt owed SSC. Based on the 25% share of the crop proceeds he had received from Roberts, Stokes figured Roberts' 75% share was sufficient to satisfy the debt owed SSC. Stokes phoned SSC to inquire about the amount of crop proceeds it had received from Roberts, but got no response. In a letter to SSC's general credit manager dated April 19, 2000, Stokes wrote that because he was a guarantor on Roberts' notes, he considered "it vital that [SSC] make a special effort to collect all income from 1999 crops plus government payments." Joint Appendix (JA) at 257.

SSC did not respond to Stokes' letter. Instead, SSC declared Roberts' notes in default without ever informing Stokes, in the form of an accounting or otherwise, that Roberts had tendered the entirety of his 1999 crop proceeds to it. Around June 12, 2000, SSC's attorney delivered a demand letter to Stokes' attorney for a balance due. The letter did not provide an accounting.

Nine days later, SSC sued Stokes for $249,854.03 in Arkansas state court. SSC incorporated neither the notes nor an accounting of Roberts' payments into its complaint. Only the guaranty and demand letter were attached.[4]

Stokes answered the complaint pro se, stating, among other things, that SSC must provide "[a] complete accounting of money borrowed and money repaid . . . . Claims cannot be evaluated without this data." JA at 52. SSC was not forthcoming. Only through the discovery process did Stokes learn a year later, in June 2001, that SSC had misapplied Robert's payments of the crop proceeds to Statesman's cash note.

Ultimately, the state court held the guaranty was valid but Stokes was not liable because the payments Roberts had tendered to SSC were sufficient to payoff the underlying notes:

> The Guaranty of Payment signed by . . . Stokes guaranteed payment to Southern States Cooperative, Inc., not to Statesman Financial Corporation. These two corporations were separate entities during the pertinent times. Harnischfeger Sales Corp. v. Ramey, 190 Ark. 913 (1935), held that a creditor "had no right to accept a check tendered for one purpose and apply its proceeds to another purpose." The Court finds the Guaranty has been satisfied by . . . Stokes, and no fact issues remain.

Merchants & Planters Bank v. P & K Farms, A P'ship, No. E-97-181-2, Order Granting Renewed and Restated Motion for Summary Judgment (Desha Co., Ark., filed Feb. 17, 2005) (unpublished). SSC did not appeal that decision.

---

[4] The state court consolidated SSC's action on the guaranty with four other actions arising from Stokes' and Roberts' agricultural dealings. The convoluted procedural history of these consolidated actions has no bearing upon our resolution of this matter. See generally Stokes v. Farmers Grain Terminal, Inc., 2006 WL 2879451 (Ark. App. 2006) (unpublished).

An understandably irate Stokes subsequently sued SSC for malicious prosecution in federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Applying Arkansas law, the district court granted SSC summary judgment because, according to the court, Stokes failed to provide evidence that [SSC] brought the underlying case either without probable cause or with malice." Stokes v. Southern States Coop., 2010 WL 4056178, at *2 (E.D. Ark. 2010) (unpublished) (hereinafter "Stokes"). The court observed that "[a]s a long-standing practice, [SSC] had first applied the proceeds from loan payments to cash notes held by Statesman." Id. The court reasoned that SSC's misapplication of Roberts' proceeds payments to Statesman's cash note had been part of the "normal course of business" between SSC and Statesman, and "[i]t was in reliance on this long-standing practice that [SSC] ultimately determined that the notes guaranteed by Stokes were deficient." Id. The court held that Stokes failed to present factual issues on the elements of probable cause and malice because "[b]ased on this system," SSC was justified in believing Stokes was liable for the deficiency. Id.

II.

To establish the tort of malicious prosecution in Arkansas, a plaintiff must prove "(1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages." Sundeen v. Kroger, 133 S.W.3d 393, 395 (Ark. 2003). In this appeal we are asked to decide whether Stokes has presented sufficient evidence of the third and fourth elements of his cause of action–that

-5-

is, the absence of probable cause and the presence of malice–to withstand SSC's motion for summary judgment under Fed. R. Civ. P. 56.[5]

A.

The requirement that a plaintiff prove the absence of probable cause and the presence of malice to recover on a claim of malicious prosecution has long been a part of Arkansas jurisprudence. In Lemay v. Williams, 1877 WL 1615 (Ark. 1877), the Arkansas Supreme Court addressed the alleged malicious prosecution of a civil action. Williams alleged Lemay obtained two orders of attachment against his property upon a debt not yet due and owing. The court explained that probable cause may be lacking where a defendant "did not act as a man of caution and prudence," or "desire[d] to gain an undue advantage of the plaintiff." Id. at *6. And in such instances, a fact finder might infer malice in the "legal sense:" "[T]he term malice *in this form of action* is not to be considered in the sense of spite or hatred against an individual but of *malus animus*, and as denoting that the party is actuated by improper and indirect motives." Id. (emphasis added). In words perhaps more apropos today than SSC might acknowledge, the court stated:

---

[5] We summarily reject SSC's suggestion that the state trial court did not terminate SSC's action on the guaranty in favor of Stokes because during the course of the consolidated proceedings the trial court ruled the guaranty was valid and Stokes was not entitled to attorney fees. See Southern States Coop., Inc. v. Stokes, 2008 WL 4946406 (Ark. App. 2008) (unpublished). Notwithstanding these rulings, that the court in the guaranty case entered *final* judgment in favor of Stokes and against SSC is beyond peradventure. SSC sought a judgment against Stokes for $249,854.03 and was awarded nothing.

-6-

[W]hen a party in fact has no valid cause of action . . . these circumstances *with others*, tend to show a want of probable cause, and if sufficiently strong may be used as evidence of malice, and an intention to injure the party against whom the process is issued, because the party suing out the process must be presumed to know whether he has a legal debt, . . . and if in fact the creditor sues out a process without a legal debt, . . . these circumstances strongly tend to fix upon him the penalties of the law for malicious prosecution, which may, however, to some extent be repelled by other evidence tending to show probable cause.

Id. at *5 (emphasis added).

Expounding upon Lemay, the Arkansas Supreme Court in Foster v. Pitts, 38 S.W. 1114 (Ark. 1897), expressly established that "belief *and* reasonable grounds must unite to constitute probable cause." Id. at 1114 (emphasis added). Malice meanwhile "is any improper *or* sinister motive for instituting the suit. It need not spring from any spirit of malevolence, or be prompted by any malignant passion." Id. at 1114 (emphasis added) (citing Lemay). Importantly, the court explained that neither element "follows as a legal presumption from the other. The jury *may* infer malice as a fact from proof of want of probable cause; but they cannot infer a lack of probable cause from proof of malice. Both must be proved."[6] Id. (emphasis added).

---

[6] "If the law imputed malice from want of probable cause alone, then there would be no distinct requirement of malice, but want of probable cause would be the sole element necessary." Kable v. Carey, 204 S.W. 748, 750 (Ark. 1918).

-7-

B.

The law of malicious prosecution in Arkansas has not much changed over the course of time. Today, probable cause in the context of a malicious prosecution action based upon a prior civil proceeding means a state of facts or credible information that would cause a person of "ordinary caution" to believe the defendant is liable and a lawsuit against him might be successful. Milton Hambrice, Inc. v. State Farm Fire & Cas. Co., 114 F.3d 722, 724 (8th Cir. 1997) (citing Hollingsworth v. First Nat'l Bank & Trust Co., 846 S.W.2d 176 (Ark. 1993)). That is to say "probable cause depends upon the facts and the law." Kable v. Carey, 204 S.W. 748, 749 (Ark. 1918). Probable cause requires a reasonable belief in (1) the presence of facts upon which the claim is based and (2) the validity of the claim under the applicable law. See Restatement (Second) of Torts (hereinafter "Restatement") § 675 (1981).[7]

Ordinary caution is a standard of reasonableness. See Wal-Mart Stores, Inc. v. Binns, 15 S.W.3d 320, 324 (Ark. 2003). And reasonableness connotes an objective inquiry. Wal-Mart Stores, Inc. v. Williams, 29 S.W.3d 754, 756 (Ark. App. 2000) ("The test for determining probable cause is an objective one."). Relying extensively upon the Restatement, the Arkansas Court of Appeals explained:

---

[7] Chapter 30 of the Restatement refers to an action based upon the prior improper institution of a civil proceeding as the "wrongful use of civil proceedings." This distinguishes such action from an action based upon the prior institution of a criminal proceeding, which Chapter 29 of the Restatement refers to as the "wrongful use of criminal proceedings" or "malicious prosecution."

-8-

[T]o have a probable-cause basis to file a lawsuit, a person need only have the opinion that the chances are good that a court will decide the suit in his favor. Restatement (Second) of Torts § 675 comment (f) at 460 (1977). *The question is not whether the person is correct in believing that his complaint is meritorious, but whether his opinion that his complaint is meritorious was a reasonable opinion.* Id. A person need have only a reasonable opinion that his complaint is meritorious because "[t]o hold that the person initiating civil proceedings is liable unless the claim proved to be valid would throw an undesirable burden upon those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions." Id.

Carmical v. McAfee, 7 S.W.3d 350, 356 (Ark. App. 1999) (emphasis added).

## C.

At the same time, Arkansas law still today defines malice as "'any improper *or* sinister motive for instituting the suit.'" Cordes v. Outdoor Living Ctr., Inc., 781 S.W.2d 31 (Ark. 1989) (emphasis added) (quoting Foster, 38 S.W. at 1114); accord Sundeen, 133 S.W.3d at 398. The Arkansas Supreme Court has referred to malice in the latter and literal sense in addressing what is required for an award of punitive damages: "[T]he underlying claim of malicious prosecution (which could have formed the sole basis for the challenged punitive-damages award), requires that the plaintiff prove intent and a spirit of ill will, hatred, or revenge." Binns, 15 S.W.3d at 325. Consistent therewith, Professors Prosser and Keeton tell us: "It is often said that proof of 'malice' is required; but it seems well settled that, except on the issue of punitive damages, this does not mean spite or ill will, or anything other than the improper purpose itself for which the process is used." W. Page Keeton, Prosser and Keeton on Torts § 120, at 897 (5th ed. 1984). Not since

the 19th Century, however, has any Arkansas court to our knowledge defined what an improper motive or purpose is in the context of a malicious prosecution claim generally. Nor has Arkansas law ever informed us how an improper motive or purpose differs from a sinister motive or purpose. That leaves us to predict what the Arkansas Supreme Court might do under the circumstances presented in this case. See Curtis Lumber Co. v. Louisiana Pac. Corp., 618 F.3d 762 771 (8th Cir. 2010).

Of course, Lemay in the context of a malicious prosecution action described malice in 1877 not as "spite or hatred against the individual," but as a bad intention ("*malus animus*") "and denoting that the party is actuated by improper and indirect motives." Lemay, 1877 WL 1615, at *6. In 1897, Foster, cited still today, told us in the same context that malice "need not spring from any spirit of malevolence, or be prompted by any malignant passion." Foster, 38 S.W. at 1114. One might presume that time surely has dispatched these decisions to the annals of Arkansas legal history. Such presumption, however, would be mistaken.

Today, the Restatement endorses a broad definition of malice much like the Arkansas Supreme Court first did in Lemay and Foster.[8] And absent

---

[8] We are well aware that as to a claim for damages based on malicious prosecution, the Arkansas Model Jury Instructions suggest a plaintiff must show the defendant "acted out of hatred, ill will, or a spirit of revenge." Arkansas Model Jury Instr., Civil, AMI 413 (2010). The decisions the model instruction cites as stating the elements of malicious prosecution in Arkansas, however, say no such thing. Rather the earliest case cited and its predecessors simply say a plaintiff must prove "[m]alice on the part of the defendant." Farm Serv. Co-op., Inc. v. Goshen Farms, Inc., 590 S.W.2d 861, 865 (Ark. 1979). Moreover, a court need not tender an Arkansas model instruction if it does "not accurately state the law applicable to the case." Allstate Ins. Co. v.

(continued...)

-10-

some convincing argument to the contrary, we believe the Arkansas Supreme Court, in the context of an action for malicious prosecution generally, would continue to endorse a definition of similar ilk. The commentary to § 676 tells us "'malice' in the literal sense of the term . . . is frequently expanded beyond that sense to cover any improper purpose."[9] Restatement § 676 cmt. c. Section 676 defines an improper purpose as "a purpose other than that of securing the proper adjudication of the claim" upon which the proceeding is based. Id. § 676. For instance, litigation initiated to force a settlement unrelated to the merits of the claim is brought for an improper purpose. See § 676 cmt. c. This occurs where a plaintiff, having no reasonable chance of success on the merits, "brings a 'nuisance suit' . . . for the purpose of forcing the defendant to pay a sum of money in order to avoid the financial and other burdens that a defense against [suit] would put upon him." Id.

III.

On appeal, Stokes first asserts the district court erred in concluding that SSC "had probable cause to believe that Stokes was liable for the deficiency even if the [state] court ultimately ruled in Stokes favor." Stokes, 2010 WL 4056178, at *2. The court reasoned that a "genuine legal dispute" existed

---

[8](...continued)
Dodson, __ S.W.3d __, __, 2011 WL 285803 (Ark. 2011).

[9] "In general, States permitting recovery for malicious prosecution . . . require the plaintiff to prove malice or improper purpose as a necessary element." Business Guides, Inc. v. Chromatic Commc'ns Enter., Inc., 498 U.S. 533, 567 (1991) (Kennedy, J., dissenting) (citing Restatement § 676); see also Larry C. Wallace, Note, Malicious Prosecution–The Law in Arkansas, 22 Ark. L. Rev. 340, 353 (1968) (expressing the view that malice under Arkansas law "does not mean the defendant must have acted out of hatred, ill will, spite or grudge").

between SSC and Stokes "over the relationship between Southern and Statesman and of the propriety of first applying loan proceeds to the Statesman loan." Stokes, 2010 WL 4056178, at *3. According to Stokes, the court "indulged [SSC's] introspective musing" by concluding SSC could misapply funds to Statesman's note because SSC had always done so pursuant to a purported policy and practice premised upon the notion that SSC and Statesman could operate in this manner.

Indeed, that is what SSC ostensibly believed. To prove it SSC referred the district court to an "intercreditor agreement" between itself and Statesman apparently providing the cash portions of crop loans would be repaid first. Id. at *3. During his deposition, Gary Dickerson, SSC's national credit manager, was asked whether Stokes had guaranteed Statesman's cash note. Dickerson answered in less than confident terms that SSC "felt" Stokes had:

> Q:    And your contention was that the guarantee covered debts owed to another entity other than [SSC]?
> A:    Well . . . I guess to answer your question, yes.
> Q.    Well, from the four corners of [the guaranty], can you give me any . . . support for that contention?
> A:    No, I cannot.

JA at 269–71.

Dickerson heads the credit department of an agricultural co-op doing business in 23 states through 1,200 retail locations. See About Southern States Cooperative, http://www.southernstates.com/sscinfo/history/index.aspx (visited August 22, 2011). Dickerson tells us he "oversee[s] anywhere from as much as four hundred fifty million dollars of roaming credit lines with either individuals, with wholesale or with some retail outlets." JA at 223.

One might be somewhat skeptical that he, and therefore SSC, really believed SSC could misapply Roberts' loan payments to Statesman's note without adversely affecting Stokes' legal rights as guarantor. But what SSC subjectively believed based upon undisclosed past practices, the intercreditor agreement, or its relationship with Statesman, does not alone give rise to a "genuine legal dispute" constituting probable cause for SSC's suit against Stokes on the guaranty.

SSC asserts Stokes offers no evidence to contradict its "honest and strong" belief that it could apply Roberts' payments to Statesman's note. But even *assuming* for the moment that SSC's belief was sincere, Stokes need not contradict SSC's subjective belief to establish want of probable cause. As we have learned, the determination of whether SSC lacked probable cause to sue Stokes on the guaranty involves both a factual and legal inquiry. See Kable, 204 S.W. at 749; Restatement § 675. The question is whether SSC's belief that it had a valid claim against Stokes on the guaranty was objectively reasonable such that a person of ordinary caution would believe Stokes could be liable under the applicable law. See Milton Hambrice, Inc., 114 F.3d at 724; Carmical, 7 S.W.3d at 356.

SSC makes no serious attempt under Arkansas law, or any law for that matter, to justify the legal basis for its state court complaint against Stokes. Nor does SSC attempt to establish that the law need be altered in its favor "consistent with changing conditions and changing opinions." Restatement § 675 cmt. f. We are not surprised because the law of debtor-creditor relations has long been that a lender may not apply the proceeds of a loan payment appropriated for one debt to another debt. See Harnischfeger Sales Corp. v. Ramey, 82 S.W.2d 1, 4 (Ark. 1935); see also Sarah H. Jenkins, Corbin on Contracts § 67.4, at 22–23 (rev. ed. 2003) (stating a debtor may manifest its intention to pay a particular debt through circumstances "including the

-13-

payment itself"). Where a debtor tenders a check for a definite purpose, "there [can be] no misunderstanding about the purpose of the tender; nor is there any uncertainty as to its legal effect." Harnischfeger Sales Corp, 82 S.W.2d at 4; cf. Gosnell v. Indep. Serv. Fin., Inc., 774 S.W.2d 430, 430–31 (Ark. App. 1989) (holding plaintiff improperly applied defendant's account payment to a debt of her deceased husband).

A *fortiori*, no law, absent some prior understanding among *all* interested parties, would countenance a lender purportedly accepting a debtor's loan payment on a guaranteed debt by way of a check *made payable to that lender*, and applying such payment to an unguaranteed debt the same debtor owes another lender–regardless of the relationship between the two lenders. Any contrary decision would throw the guarantor together with the law of guaranty under the bus. Caveat guarantor! Cf. Restatement (Third) of Suretyship & Guaranty § 46 (1996) (stating that where a creditor refuses a debtor's tender of payment, the guarantor is discharged to the extent of the tender).

SSC's (and Statesman's) self-serving practice, however long such "customary" practice endured, impaired Stokes' contractual rights under the guaranty and threatened to chill the course of agricultural commerce. SSC's suit against Stokes on the guaranty had no basis in law, none whatsoever. And a person of ordinary caution cognizant of the facts and versed in the law would well understand this.[10] See Milton Hambrice, Inc.,

---

[10] Here we simply note that where probable cause is absent, a defendant in a malicious prosecution action nonetheless must be exonerated if the facts establish that such defendant made a full and fair disclosure to competent counsel of all facts known and acted in good faith reliance upon counsel's advice. Of course, the burden is upon the defendant to establish such facts and good faith reliance. See Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox, 922 S.W.2d 327, 332 (Ark. 1996).

114 F.3d at 724; Carmical, 7 S.W.3d at 356. The relevant inquiry is whether SSC's belief that its claim against Stokes had merit was reasonable. See Restatement § 675 cmt. f. The applicable law plainly tells us SSC's belief was not reasonable. Accordingly, the district court erred in holding the evidence was insufficient as a matter of law to sustain Stokes' claim that SSC brought suit against him on the guaranty without probable cause.[11]

## IV.

Stokes next asserts the district court erred in concluding that the evidence of malice he produced was insufficient to warrant submitting his case to a jury. See Stokes, 2010 WL 4056178, at *4. The court opined that "[a]side from [SSC's] long-standing practice of first applying proceeds to cash loans, Stokes provides no evidence to support his contention that [SSC] improperly schemed to 'misappropriate his money.'" Id. at *3. That SSC "schemed" to misappropriate Stokes' money *may* be a bit of an overstatement. But apart from the dearth of law to support SSC's claim, a bevy of facts certainly may suggest that SSC sued Stokes with the "'improper or sinister motive,'" to out-resource Stokes and strong-arm him into meeting its demands. Sundeen, 133 S.W.3d at 398; see Restatement § 676 cmt. c. (stating that pursuing a lawsuit for the purpose of forcing a settlement unrelated to the claim's underlying merits is improper).

---

[11] Under Arkansas law, probable cause is a question of law when "'the facts relied upon to create probable cause and the *reasonable* inferences to be drawn from the facts are undisputed.'" Milton Hambrice, Inc., 114 F.3d at 724 (quoting Cox v. McLaughlin, 867 S.W.2d 460, 464 (Ark. 1993)) (emphasis added). On appeal, Stokes only asks us to decide whether the district court erred in deciding as a matter of law that SSC had probable cause to sue him. Because Stokes has not asked us to decide as a matter of law that SSC did not have probable cause to sue him, we leave that determination to the district court in the first instance.

The facts, none of which SSC contests, are: (1) SSC and Statesman were at all relevant times separate business entities; (2) The plain language of Stokes' guaranty secured Roberts' debt to SSC, not Statesman; (3) Prior to suing Stokes, SSC never disclosed its past practice, or intercreditor agreement with Statesman; (4) The crop checks Roberts tendered to SSC named SSC as a payee, not Statesman; (5) SSC's regional credit manager informed Stokes that Roberts' crop proceeds were insufficient to satisfy the latter's debt to SSC; (6) SSC did not respond to Stokes' phone and letter inquiries regarding the disposition of Roberts' crop proceeds; (7) SSC's demand letter and complaint failed to incorporate an accounting of Roberts' loan payments; (8) Stokes only learned months later through the compulsion of state court discovery that SSC had permitted the misapplication of Roberts' payments; and finally (9) SSC advised Stokes, through their respective attorneys as part of a settlement offer, that the fees and costs associated with its lawsuit would be "extremely high," but SSC had the resources to "stay the course" and was "committed to do so." JA at 303.

We suppose a jury upon these facts could find SSC held a sincere belief that it had a valid claim against Stokes or at least did not harbor a malicious state of mind in suing him on the guaranty. See Kellerman v. Zeno, 983 S.W.2d 136, 141 (Ark. App. 1998) (noting that malice is a "state of mind"). But the district court erred in determining no reasonable jury could find otherwise. First, SSC's "belief" in the validity of its claim against Stokes is a self-serving proposition bearing on its state of mind. Arkansas law tells us that "[s]ubjective beliefs are no more than conclusions and are not, therefore, competent summary judgment evidence." Flentje v. First Nat'l Bank, 11 S.W.3d 531, 539 (Ark. 2000). Second, the record evidence extends far beyond SSC's "long-standing practice of first applying proceeds to cash loans." Stokes, 2010 WL 4056178, at *3.

-16-

By way of checks made payable to SSC with all proper endorsements, SSC ostensibly accepted Roberts' payments in satisfaction of the notes Stokes had guaranteed, and then, without Stokes' knowledge or approval, permitted Statesman to misapply those payments to satisfy its cash note. SSC permitted this despite the fact that (1) SSC and Statesman were legally distinct entities, (2) none of the checks that Roberts tendered to SSC named Statesman as a payee, and (3) nothing in Stokes' guaranty suggested he had guaranteed Statesman's note. This scenario alone is sufficient to give pause to a person of ordinary sensibility. But there's more.

When a credit manager at SSC first informed Stokes that Roberts' crop proceeds were insufficient to pay off SSC's notes, Stokes understandably and justifiably sought a more detailed explanation. Stokes originally thought Roberts might have stolen some of the crop proceeds because Stokes knew, based on his 25% crop share, that Roberts' 75% share was sufficient to pay off SSC's notes. SSC did not bother to return Stokes' phone call or respond to his letter of inquiry regarding the matter. Instead, SSC demanded payment from Stokes and then promptly sued Stokes on the guaranty without ever providing him an accounting of payments received and applied. In his answer to the complaint, Stokes again asked for an accounting so he could properly evaluate SSC's claim. Only upon the legal compulsion of discovery, however, did SSC tell Stokes the truth.

The district court discounted SSC's apparent reticence:

Stokes . . . had access to the payment records when his attorney began taking depositions of [SSC] employees in June 2001. At that time, he had ample opportunity to discover where and how the payments had been applied. Aside from mere allegations, Stokes has presented no evidence to support the conclusion that SSC

-17-

actively concealed information about the amounts paid or the application of payments to the Statesman note.

Stokes, 2010 WL 4056178, at *4 (internal record citation omitted). In reasoning that Stokes *eventually* had "ample opportunity" to access Roberts' payment records," the district court failed to account for the reasonable inferences bearing upon SSC's state of mind that might be drawn from the facts. SSC's claim of Roberts' default based on his failure to pay should have been simple to prove up. A reasonable inference to be drawn from SSC's prompt failure to do so is that SSC had something to hide, namely that its claim against Stokes was baseless.

Based on the surrounding facts, a jury too might wonder what to make of SSC's October 2004 letter to Stokes reminding him of the possible financial consequences of continuing to resist settlement. We agree with the district court that SSC's "letter does not provide sufficient evidence for a reasonable jury to conclude that [SSC] brought or continued the lawsuit with malice." Stokes, 2010 WL 4056178, at *4. Unfortunately, letters such as this are circulated far too frequently by lawyers on behalf of their clients. But given all that had gone before, the letter's language is not wholly irrelevant to SSC's state of mind in pursuing its suit against Stokes and is *some* evidence of an improper motive.

We conclude a jury must decide what was SSC's motive or purpose in suing Stokes *if* it *in fact* understood it had no reasonable chance of prevailing on the merits of its claim against Stokes. A reasonable jury could infer from the undisputed facts, considered in their entirety, that SSC brought its lawsuit against Stokes for an improper purpose, that is, "a purpose other than that of securing the proper adjudication of [its] claim." Restatement § 676. Certainly, nothing in the record before us suggests that SSC acted out of

hatred or revenge in suing Stokes on the guaranty. <u>See</u> <u>Binns</u>, 15 S.W. 3d at 325. And while we cannot entirely discount the possibility that SSC in pursuing its claim against Stokes possessed an "ill will," defined as a "bad desire," <u>see</u> <u>Black's Law Dictionary</u> 763, 1628 (8th ed. 2004) (defining "ill" as "bad" and "will" as "desire"), that determination must await development of the evidence.

REVERSED and REMANDED for further proceedings consistent with this opinion.

——————————————————